**TEMPLE EASTEX, INC., Red Gillard Plumbing Co., and Greener & Sumner Construction Co., Appellants,**

v.

**OLD ORCHARD CREEK PARTNERS, LTD., et al., Appellees.**

**No. 05–90–00773–CV.**

Court of Appeals of Texas, Dallas.

Dec. 1, 1992.

Rehearing Denied Jan. 13, 1993.

---

Michael R. Knox, Knox Beasdles & Johnston, Paul L. Smith, Paul L. Smith & Associates, P.C., Dallas, Linda G. Moore, Akin Gump Strauss Hauer & Feld, Steven H. Stodghill, Akin Gump Strauss Hauer & Feld, Dallas, William W. Kilgarlin, Powell Popp & Ikard, Austin, James E. Singer, Bovis Kyle & Burch, Atlanta, GA, W. James Kronzer, Law Office of W. James Kronzer, Houston, Lancaster Smith, Smith Smith & Smith Law Office, Dallas, Harvey L. Davis, Austin, for appellants.

Sharis L. Hauder, Fanning Harper & Martinson, P.C., Dallas, Mike A. Hatchell, Ramey Flock Jeffus Crawford Harper & Collins, Tyler, for appellees.

Before KINKEADE, ROSENBERG and WIGGINS, JJ.

## OPINION ON REHEARING

KINKEADE, Justice.

We grant in part and overrule in part appellants' motions for rehearing and grant appellant Red Gillard Plumbing Co., Inc.'s motion for modification of judgment. We withdraw our opinion of September 30, 1992, and vacate our judgment of that date. This is now the Court's opinion.

Temple EasTex and Red Gillard Plumbing Company appeal a judgment rendered for Old Orchard Creek Partners in this negligence and products liability cause of action. Greener & Sumner Construction Company appeals a judgment rendered for Temple EasTex and Red Gillard Plumbing Company granting them rights of contribution against Greener & Sumner.

All three appellants allege multiple points of error. Collectively, they argue that there is insufficient evidence to support the jury's findings and that the trial court erred in (1) its interpretation of the construction contract, (2) granting a joint and several judgment, (3) granting rights of contribution, and (4) seating an alternate juror.

Because the trial court erred (1) in its interpretation of the construction contract, (2) in holding Red Gillard jointly and severally liable with Temple EasTex, and (3) in holding Red Gillard and Greener & Sumner liable for contribution, we reverse the trial court's judgment as to Red Gillard and Greener & Sumner and render judgment for Red Gillard and Greener & Sumner. Because the trial court improperly seated the alternate juror, we remand the remainder of this cause to the trial court.

## FACTUAL AND PROCEDURAL HISTORY

In 1983, Old Orchard Creek Partners, Ltd. owned an apartment complex under construction in Lewisville, Texas, known as the Oak Tree Village Apartments. Old Orchard hired Greener & Sumner as the general contractor for the construction project. Greener & Sumner hired Red Gillard as a subcontractor to coordinate the installation of the plumbing fixtures in the apartment buildings. Red Gillard hired N & H Plumbing Company to perform the plumbing construction in certain buildings.

On September 1, 1983, Ricky Minnis and Anthony Rawlinson, two employees of N & H Plumbing, were "sweating pipes" on the third floor of one of the apartment buildings. The flame from Rawlinson's torch set fire to a piece of fiberboard manufactured by Temple EasTex. Rawlinson and Minnis poured water over the flame to extinguish the fire. Because there was no smell or sign of flames or smoke during the next thirty minutes, Rawlinson and Minnis concluded that they had successfully extinguished the fire. Two to three hours later, a fire was spotted in the same building in which Minnis and Rawlinson had been working. The Lewisville Fire Department arrived at the scene but could not stop the fire from spreading. As a result, the fire destroyed almost the entire apartment complex.

Old Orchard, as owner, brought this action in its own right and on behalf of the Insurance Company of the State of Pennsylvania, its subrogee, alleging negligence and products liability claims in connection with the fire damage to the apartment complex under construction. Old Orchard brought suit against Temple EasTex and

Red Gillard. Red Gillard then filed a third-party action against Johnny Nunez and Bill Hardin, individually and d/b/a N & H Plumbing. Temple EasTex filed a third-party action against Greener & Sumner and filed cross-claims against Red Gillard and N & H Plumbing. Old Orchard alleged that Temple EasTex manufactured defectively designed fiberboard used in the construction of the complex and that plumbers working for or under Red Gillard negligently caused a smoldering fire in the fiberboard that later rekindled and spread, destroying most of the project.

The jury found that (1) the design defect in the fiberboard was a producing cause of the occurrence, (2) N & H's plumbers were negligent, and (3) Greener & Sumner was negligent. It apportioned causation as follows: (1) N & H Plumbing, 60%; (2) Red Gillard, 22.5%; (3) Greener & Sumner, 10%; and (4) Temple EasTex, 7.5%. N & H Plumbing has not perfected an appeal.

The trial court entered a joint and several judgment against Temple EasTex and Red Gillard for the stipulated damages of $7,729,564.81. The trial court then granted rights of contribution to these two defendants against one another and against Greener & Sumner and N & H Plumbing.

## WAIVER

In Red Gillard's first and second points of error and Greener & Sumner's third point of error, they contend that the trial court erred in not giving effect to either the waiver provision or the property insurance provision in the construction contract. They argue that Old Orchard waived any claims against them for damages caused by fire to the extent that its losses were covered by insurance, under section 11.3.6 of the construction contract. To the extent that Old Orchard's losses exceeded insurance coverage, Red Gillard and Greener & Sumner argue that Old Orchard assumed the risk of loss by breaching section 11.3.1 of the construction contract by failing to notify Greener & Sumner that it was not maintaining insurance on the property to its full insurable value.

Old Orchard argues that the contract between itself and Greener & Sumner is not a blanket waiver of liability and that Red Gillard is not entitled to benefit from its provisions. Old Orchard further argues that, even if the waiver clause applies to Red Gillard, it applies only to the extent covered by insurance and, therefore, Red Gillard is not exonerated from all liability. Red Gillard responds that it is a third-party beneficiary of the construction contract and is, therefore, entitled to benefit from the contract's provisions.

The contract between Old Orchard, owner, and Greener & Sumner, contractor, is a standard form contract A201–1976 provided by the American Institute of Architects (AIA). The contract provides in part:

**Section 11.3.1** Unless otherwise provided, *the Owner shall purchase and maintain property insurance upon the entire Work at the site to the full insurable value thereof.* This insurance shall include the interests of the Owner, the Contractor, Subcontractors and Sub-sub-contractors in the work and shall insure against the perils of fire, extended coverage, and shall include "all risk" insurance for physical loss or damage including, without duplication of coverage, theft, vandalism and malicious mischief. *If the Owner does not intend to purchase such insurance for the full insurable value of the entire Work, he shall inform the Contractor in writing prior to commencement of the Work.* The Contractor may then effect insurance which will protect the interests of himself, his Subcontractor and the Sub-sub-contractors in the work, and by appropriate Change Order the cost thereof is charged to the Owner. *If the Contractor is damaged by failure of the Owner to purchase or maintain such insurance and to notify the Contractor, then the Owner shall bear all reasonable costs properly attributable thereto.*

**Section 11.3.6** *The Owner and Contractor waive all rights against (1) each other and the Sub-contractors, Sub-sub-contractors, agents and employees each of the other,* and (2) the Architect and separate contractors, if any, and their

subcontractors, sub-subcontractors, agents and employees, *for damages caused by fire or other perils to the extent covered by insurance obtained pursuant to this Paragraph 11.3* or any other property insurance applicable to the Work, except such rights as they may have to the proceeds of such insurance held by the owner as trustee. The foregoing waiver afforded the Architect, his agents and employees shall not extend to the liability imposed by Subparagraph 4.18.3. The Owner or Contractor, as appropriate, shall require of the Architect, separate contractors, Subcontractors, and Sub-subcontractors by appropriate agreements, written where legally required for validity, similar waivers each in favor of all other parties enumerated in this Subparagraph 11.3.6.

(Emphasis added.)

### Third–Party Beneficiary

Generally, only parties to a contract have the right to complain of its breach. *Merrimack Mut. Fire Ins. Co. v. Allied Fairbanks Bank*, 678 S.W.2d 574, 577 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.). An exception exists when one who is not a party to· the contract shows that the contract was actually made for his benefit and that the contracting parties intended that he benefit by it. In such a case, he becomes a third-party beneficiary entitled to bring an action on the contract. *Id.* at 577.

The inclusion of the word "sub-subcontractor" in the waiver clause indicates that a considerable depth of parties was contemplated and that the waiver was not meant to be limited only to those who contracted directly with the prime contractor. *Crow–Williams, I v. Federal Pac. Elec. Co.*, 683 S.W.2d 523, 524 (Tex.App.—Dallas 1984, no writ). The language, *"The Owner and Contractor waive all rights against each other and the Sub-contractors, Sub-subcontractors, agents and employees each of the other ...,"* in section 11.3.6 of the contract reveals Old Orchard's and Greener & Sumner's intent that the waiver provision extend to subcontractors. Therefore, Red Gillard, as a subcontractor, is

entitled to benefit from the waiver provision. Because Red Gillard is benefitted by the waiver provision, Red Gillard is a third-party beneficiary of the construction contract. As a third-party beneficiary, Red Gillard is entitled to rely upon and to enforce all of the contract's provisions.

### Waiver and Assumption of Risk

We have found no Texas case interpreting the effect of the AIA contract under consideration. In other jurisdictions, courts addressing this issue have concluded that the contract bars the owner, or its subrogee insurance company, from bringing suit against either general contractors or subcontractors for damages caused by fire or other peril. *See United States Fidelity & Guar. Co. v. Farrar's Plumbing & Heating Co.*, 158 Ariz. 354, 355, 762 P.2d 641, 642 (Ariz.Ct.App.1989); *see also Mission Nat'l Ins. Co. v. Hartford Fire Ins. Co.*, 702 F.Supp. 543, 546 n. 5 (E.D.Pa.1989) (the provisions of the AIA agreement apply to contractors and subcontractors alike). The contract operates to shift to the owner the ultimate risk of loss. *Commercial Union Ins. Co. v. Bituminous Cas. Corp.*, 851 F.2d 98, 101 (3d Cir.1988). The contract mandates that the owner procure fire insurance for the project and that all parties to the construction contract look only to the owner's insurance to protect themselves from fire loss. *United States Fidelity & Guar. Co.*, 762 P.2d at 642.

Section 11.3.6 of the contract operates as a waiver as to all rights of the owner and contractor against the subcontractors for damages caused by fire or other perils to the extent that such damages are covered by insurance obtained pursuant to section 11.3.1. Section 11.3.1 places an affirmative duty upon the owner to procure property insurance that covers the interests of the owner, the contractor, and the subcontractors. *Commercial Union Ins. Co.*, 851 F.2d at 101; *United States Fidelity & Guar. Co.*, 762 P.2d at 642. If the owner fails to purchase adequate insurance and fails to notify the contractor that the project is underinsured, the

owner bears the risk of loss to the extent that damages are not covered by insurance. *Steamboat Dev. v. Bacjac Indus., Inc.*, 701 P.2d 127, 128 (Colo.App.1985). The policy underlying these clauses is to avoid disruption and disputes among the parties to the project. The need for lawsuits between the parties is eliminated because all contracting parties are protected from property loss under the owner's property insurance. *Tokio Marine & Fire Ins. Co. v. Employers Ins.*, 786 F.2d 101, 104 (2d Cir.1986); *see also United States Fidelity & Guar. Co.*, 762 P.2d at 642.

■ Under section 11.3.6 of the construction contract, Old Orchard and Greener & Sumner waived all rights against each other, the subcontractors, sub-subcontractors, agents, and employees of each other for damages caused by fire or other perils to the extent that the damages were covered by insurance. The stipulated damages in this case, however, exceeded the insurance coverage, indicating that the property was underinsured. Section 11.3.1 mandated that Old Orchard procure fire insurance for the project or notify Greener & Sumner if it did not intend to purchase such insurance for the full insurable value of the project. There is no evidence in the record that Old Orchard notified Greener & Sumner of its intention not to maintain adequate property insurance as required by the contract. Old Orchard, therefore, in effect became the insurer and is liable for damages to the extent that an insurance carrier would have been liable had adequate insurance been obtained. *Steamboat Dev.*, 701 P.2d at 128. Since Old Orchard failed to notify Greener & Sumner that it was not carrying adequate insurance, it assumed the risk of loss for the damages in excess of the insurance coverage. Because Old Orchard waived all claims against Greener & Sumner and Red Gillard for damages resulting from fire to the extent that the damages were covered by insurance and assumed the risk of loss for damages exceeding insurance coverage, we sustain Red Gillard's first and second points of error and Greener & Sumner's third point of error.

## NO EVIDENCE

### Standard of Review

■ In addressing a no-evidence challenge, we must consider only the evidence and inferences, viewed in their most favorable light, that support the jury's finding, and we must disregard all evidence and inferences to the contrary. *Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex.1987). If there is more than a scintilla of evidence to support the finding, then the no-evidence point fails. *Id.* at 16. When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, then the evidence is no more than a scintilla and, in legal effect, is no evidence. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983); *Seideneck v. Cal Bayreuther Assocs.*, 451 S.W.2d 752, 755 (Tex.1970); *see also* Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 TEX. L.REV. 361, 362–65 (1960). If the evidence supplies some reasonable basis for differing conclusions by reasonable minds to the existence of a vital fact, however, then there is some evidence. *Kindred*, 650 S.W.2d at 63.

### Defective Design

In Temple EasTex's first point of error, it contends that there is no evidence to support the jury's finding that the fiberboard was defectively designed. Temple EasTex argues that the submitted evidence of inadequate warnings went to a marketing-defect theory. Further, Temple EasTex argues that Old Orchard failed to show that a design defect existed because Old Orchard did not offer evidence that alternate designs were available.

Temple EasTex manufactured the fiberboard involved in this case. It makes the product from wood chips, which are ground into a pulp, formed into sheets, and dried. These sheets are then coated on both sides with a black asphalt substance, which is water resistant and more fire resistant than the inner wood pulp. The product has the capability of igniting and smoldering. As a result, Temple EasTex printed the following warning in magenta-colored ink

on one side of each piece of fiberboard it manufactured: "CAUTION: COMBUSTIBLE MAY SMOULDER OR BURN IF IGNITED."

Texas recognizes three types of actionable product defects: manufacturing defects (flaws), design defects, and marketing defects (warnings and directions). 2 J. HADLEY EDGAR & JAMES B. SALES, TEXAS TORTS & REMEDIES § 40.02[1] (1990). A defect arising from the design process makes every unit of the product unreasonably dangerous. *Id.* To determine whether a manufacturer defectively designed a product, the jury must balance the product's utility against the likelihood and gravity of injury from its use. *Boatland of Houston, Inc. v. Bailey,* 609 S.W.2d 743, 746 (Tex. 1980). If the plaintiff has no evidence of a specific defect in the product's design, however, the plaintiff may offer evidence of its malfunction as circumstantial proof of the product's defect. *General Motors Corp. v. Hopkins,* 548 S.W.2d 344, 349–50 (Tex. 1977). The jury *may* consider *many* factors before deciding whether a product's usefulness or desirability is outweighed by its risks. *Boatland,* 609 S.W.2d at 746. Some relevant factors are the product's usefulness and desirability, the likelihood and gravity of injury from the product's use, and the expectations of the ordinary consumer. *Turner v. General Motors Corp.,* 584 S.W.2d 844, 846–47 (Tex.1979). Further, a warning is one of a product's design attributes that weighs in the balance of dangers against utility to determine whether the product is unreasonably dangerous. *Carter v. Johns–Manville Sales Corp.,* 557 F.Supp. 1317, 1320 (E.D.Tex.1983). It is not essential, however, to establish each factor as the basis for recovery. TEXAS TORTS & REMEDIES § 41.-03[3][a]. The defectiveness of the product in question is determined in relation to safer alternatives, and evidence of the actual use of, or capacity to use, the safer alternatives is relevant. *Jampole v. Touchy,* 673 S.W.2d 569, 573 (Tex.1984). We must judge whether a product was defectively designed against the technological context existing at the time of its manufacture. This feasibility is a relative, not an absolute, concept. The more scientifically and economically feasible the alternative was, the more likely that a jury may find that the product was defectively designed. *Boatland,* 609 S.W.2d at 746. Evidence of actual use of a safer design by the defendant or others at the time of manufacture is admissible on the issue of defective design and is strong evidence of feasibility. *Id.* at 746–48.

The trial court instructed the jury that a "design defect" is a condition of the product that makes it unreasonably dangerous as designed, considering the utility of the product and the risk involved in its use. Considering only the evidence that supports the jury's finding, the record shows that:

(1) Monroe Todd, retired fire marshall of the Richardson Fire Department, testified that the fiberboard was "unreasonably dangerous" and that, after an initial fire is thought to be out, the fiberboard has a tendency to smolder and rekindle. On cross-examination, Todd testified that plumbers' torches cause most of the fires involving fiberboard.

(2) Joseph Zicherman, an expert witness for Old Orchard, testified that the fiberboard was "defective," that the product was "unreasonably dangerous," that the fiberboard contained an inherent problem in that fires result even after individuals think the fire is out, and that the warning on the fiberboard was inadequate because it was located on only one side of the product and it did not tell the end-user how to extinguish a smoldering fire or that the product could not be adequately extinguished with water.

(3) Jimmy Leach, the fire marshall who investigated the fire for the Lewisville Fire Department, testified that some fire departments have adopted departmental policies on how to deal with fiberboard fires. These policies entail a specific procedure that involves cutting away the part of the

fiberboard that initially catches on fire thus reducing or eliminating the chance of a larger fire caused by smoldering.

(4) John Minsinger, Temple EasTex's technical director for fiber products operations and its employee for over fifteen years, stated in his deposition introduced at trial that the smoldering and/or rekindling of fiberboard was known throughout the industry, including Temple EasTex, since the early 1970s. He also stated that the warning was printed on only one side of the product and that the ink used to print the warning faded after about two weeks in the sunlight.

(5) Alternative products were available and in use throughout the industry at the time of the fire. Charles Greener, one of the owners of Greener & Sumner, testified that his firm selected the asphalt-coated fiberboard because gypsum rock board, a nonflammable substance, was unavailable at the time due to a shortage. Raymond Sanders, a Temple EasTex employee, testified that the industry also produced a fiberboard coated with asphalt on only one side and that Temple EasTex produced a rigid foam sheathing and an isofoam covered with aluminum, both of which melted rather than smoldered when heated.

Viewing this evidence and the inferences flowing therefrom in the light most favorable to the verdict, there is some evidence that the condition of Temple EasTex's fiberboard created a substantial fire risk when used for its intended purpose, that the warning was inadequate, and that safer alternatives were available. Because there is some evidence supporting the jury's finding that the fiberboard contained a design defect, we overrule Temple EasTex's first point of error.

### Proximate Cause

In Temple EasTex's second point of error, it contends that there is no evidence to support the jury's finding that its fiberboard was a producing cause of Old Orchard's damages. Temple EasTex argues that the only evidence of causation is the testimony of Fire Marshall Leach and that this evidence is incompetent because the fire marshall ignored the plumbers' testimony that they had put the fire out completely.

The jury is the sole judge of the weight and credibility given to each witness's testimony. When a jury relies on expert opinion, the jury may regard that opinion as conclusive, if it is otherwise credible and free from contradiction and inconsistencies. *Gray v. Floyd,* 783 S.W.2d 214, 216 (Tex.App.—Houston [1st Dist.] 1990, no writ).

Considering only the evidence supporting the jury's finding, the record shows that:

(1) One of N & H's unlicensed plumbers working on the project was sweating pipes on a third-floor apartment unit. Because his torch was low on fuel, he had to leave the flame on longer, which caught the fiberboard on fire. The plumber tried to extinguish the fire by blowing on it and slapping it out with his hand. Although the fire would go out for a second, it continued to flame back up. Another plumber helped in extinguishing the fire by pouring water over the flame. Neither plumber noticed any flames or smoke as they checked the area before leaving thirty minutes later. The plumbers thought that they had put out the fire.

(2) About two to three hours after the plumbers left, flames engulfed the project.

(3) Leach, the fire marshall who investigated the fire, determined that the fire was caused by a rekindling of the fiberboard from the previous fire ignited by the plumber's torch. His investigation eliminated other possible causes for the fire, such as electrical problems, gas, lightning, and arson.

(4) Leach was familiar with asphalt-coated fiberboard such as the fiberboard

involved in this occurrence. During his experience as a fire marshall, fire departments determined that, because of similar type fires and the nature of the fiberboard, the product had a rekindling effect that was almost impossible to put out. Standard fire departmental policy called for removing the portion of the product involved.

Viewing this evidence and the inferences flowing therefrom in the light most favorable to the verdict, there is some evidence that Temple EasTex's fiberboard proximately caused Old Orchard's damages. Because there is some evidence that Temple EasTex's defectively designed fiberboard proximately caused Old Orchard's damages, we overrule Temple EasTex's second point of error.

## CONTRIBUTION

In Red Gillard's third point of error, it contends that the trial court erred in holding it liable to Temple EasTex and Greener & Sumner for contribution. Red Gillard argues that the contribution claims are derivative in nature from Old Orchard's claim and that, because Old Orchard waived its claims against Red Gillard, the contribution claims must fail. Red Gillard relies upon *Hunter v. Fort Worth Capital Corp.*, 620 S.W.2d 547, 553 (Tex.1981), for the general rule that contribution cannot be obtained from a party against whom the injured party has no cause of action. Because the trial court's judgment did not grant Greener & Sumner rights of contribution against Red Gillard, we need address only Red Gillard's argument as to Temple EasTex.

In Greener & Sumner's eleventh point of error, it contends that the trial court erred in holding Temple EasTex jointly and severally liable for the entire amount of stipulated damages and in holding Greener & Sumner liable to Temple EasTex and Red Gillard for contribution. Greener & Sumner's argument, however, addresses only the joint and several liability issue. Although Greener & Sumner does not specifically argue the contribution issue, it does make reference to the "other appellants' arguments" under this point. We will,

therefore, in the interest of justice, and in light of Greener & Sumner's reference to the other appellants' arguments, address Temple EasTex's contribution rights against Greener & Sumner under Red Gillard's argument. Because of our disposition concerning the construction contract's waiver and insurance provisions, we need not address that portion of Greener & Sumner's argument relating to Temple EasTex's joint and several liability or Greener & Sumner's contribution liability to Red Gillard.

Temple EasTex contends that the waiver provision is a private contractual agreement and, therefore, such provision cannot adversely affect its right to contribution from co-tortfeasors. Temple EasTex further contends that, although the waiver bars Old Orchard's claims against Red Gillard and Greener & Sumner, the waiver does not extinguish their status as joint tortfeasors. Temple EasTex argues that the rule in *Hunter* is inapplicable in the present case where a cause of action was available but waived through contract. Temple EasTex further argues that the waiver and release between Old Orchard and its contractors and subcontractors should be treated as settlements by co-tortfeasors under *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414 (Tex.1984), and that the "percent credit scheme" developed in *Duncan* should apply.

Old Orchard responds that Temple EasTex is not entitled to application of the *Duncan* percent-credit system in the present case and that Temple EasTex should be held liable for one hundred percent of the damages. Old Orchard contends that Temple EasTex's argument stretches the concept of settlement too far. Old Orchard cites numerous authorities for its proposition that if the contractual waiver operates as a bar of Old Orchard's claims against Red Gillard and Greener & Sumner, then Red Gillard and Greener & Sumner cannot be considered "joint tortfeasors" for contribution purposes. See *Varela v. American Petrofina Co. of Tex., Inc.*, 658 S.W.2d 561 (Tex.1983); *City of Austin v. Cooksey*, 570 S.W.2d 386 (Tex.1978); *UMC, Inc. v. Coon-*

*rod Elec. Co.,* 667 S.W.2d 549 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.); *Grove Mfg. Co. v. Cardinal Const. Co.,* 534 S.W.2d 153 (Tex.Civ.App.—Houston [14th Dist.] 1976, writ ref'd n.r.e.). None of the cases cited by Old Orchard are applicable to the facts presented here.

In *Palestine Contractors, Inc. v. Perkins,* 386 S.W.2d 764 (Tex.1964), the Texas Supreme Court addressed a situation analogous to the one at issue here. There, the court held that a covenant not to sue given to one of two negligent joint tortfeasors operated as a release of that tortfeasor as to all liability and precluded the plaintiff from recovering more than half the amount of damages from the non-settling defendant. *Palestine,* 386 S.W.2d at 766, 773. The court adopted a pro rata credit scheme, which reduced the non-settling defendant's liability by an amount equal to the number of settling tortfeasors divided by the total number of tortfeasors. *Duncan,* 665 S.W.2d at 430. The non-settling defendant, however, had no right of contribution against the settling tortfeasor because the non-settling defendant was not required to pay more than his share of the judgment. *Palestine,* 386 S.W.2d at 767–68. This rule gives finality to the settlement and prevents circuity of action because the settling tortfeasor would have no occasion to sue the plaintiff to recoup his loss. *Id.*

■ Although *Palestine* remains good law, it later was modified in *Duncan,* wherein the court adopted a *comparative causation* scheme and *percent-credit* system for apportioning liability among co-tortfeasors. *Duncan,* 665 S.W.2d at 430. A comparative causation scheme requires the trier of fact to compare the harm caused by the defective product with the harm caused by the negligence of the other defendants, any settling tortfeasors, and the plaintiff. *Id.* at 427. The percent-credit system requires the non-settling defendant to pay his allocated share, neither enhanced nor diminished by the accommodation between the plaintiff and a settling tortfeasor. *Id.* at 431. A settlement with one tortfeasor will reduce the plaintiff's recovery and the liability of the non-set-

tling defendants by the percentage of causation allocated to the settling tortfeasor by the trier of fact. *Id.* at 429–30.

■ Although we agree that Old Orchard could not maintain a negligence cause of action against Red Gillard or Greener & Sumner, we do not blindly apply the rule in *Hunter* to the present case. We find *Palestine* and *Duncan* applicable to the facts in this case. An agreement not to sue one tortfeasor operates as a settlement of that tortfeasor's liability. *Palestine,* 386 S.W.2d at 766, 773. In such instances, the plaintiff's recovery and the non-settling tortfeasor's liability must be reduced by the percentage of causation attributed to all settling tortfeasors by the trier of fact. *Duncan,* 665 S.W.2d at 429–30.

■ The contractual waiver operates to release Red Gillard and Greener & Sumner from all liability for the damages caused by the fire. In executing the waiver, Old Orchard agreed not to sue Red Gillard or Greener & Sumner in the event that either negligently caused Old Orchard to incur damages from fire. The waiver does not prevent Red Gillard or Greener & Sumner from being negligent in causing the fire, but it deprives Old Orchard of the ability to seek damages against them. Had Red Gillard and Greener & Sumner been found to be active tortfeasors in causing Old Orchard's damages, the waiver released them from all liability to Old Orchard. The waiver, therefore, operates like a release and settlement of any claims Old Orchard may have against Red Gillard or Greener & Sumner for damages caused by the fire, which invokes the *Duncan* percent-credit system for apportioning damages. *Id.* at 429–31.

Old Orchard argues that, because the contractual waiver occurred before the injury or loss, Red Gillard and Greener & Sumner cannot be co-tortfeasors whose fault is factored into the *Duncan* scheme. We find no reason to distinguish between a pre-injury waiver of claims and a post-injury release or settlement in apportioning damages under the facts of this case. Both operate as an agreement to release

contracting tortfeasors from liability, leaving the plaintiff to seek its damages only from the non-released tortfeasors. The rights of a non-released tortfeasor, like Temple EasTex, cannot be adversely affected by an agreement to which it was not a party. The plaintiff, therefore, may not recover from the non-released tortfeasors that portion of its damages attributed to the released tortfeasors by a trier of fact. *Id.* at 429–30.

 We hold that the *Duncan* percent-credit system is applicable to the facts in this case. Old Orchard's recovery and Temple EasTex's liability must be reduced by the percent share of causation assigned to each waived tortfeasor by the trier of fact. Contribution is recoverable from an alleged tortfeasor only when the party claiming contribution is forced to pay the injured party for another alleged tortfeasor's liability. *Amoco Chem. Corp. v. Malone Serv. Co.*, 712 S.W.2d 611, 613 (Tex. App.—Houston [1st Dist.] 1986, no writ). Because Temple EasTex is liable only for its allocated share of damages as determined by the trier of fact, Temple EasTex may not claim contribution from Red Gillard and Greener & Sumner. *See Palestine*, 386 S.W.2d at 767–68. We sustain Red Gillard's third point of error and Greener & Sumner's eleventh point of error to the extent that it relates to Temple EasTex's rights of contribution against Greener & Sumner.

## ALTERNATE JUROR

In Temple EasTex's fifth and sixth points of error, it contends that the trial court erred in not granting a new trial. Temple EasTex argues that the trial court erroneously impaneled two alternate jurors without allowing it to exercise one peremptory challenge in addition to those otherwise allowed by law and in later permitting an objected-to alternate juror to participate in deliberations and cast the decisive vote in the jury's verdict.

Old Orchard argues that Temple EasTex did not preserve the alleged error by (1) not making a timely, specific objection to the impaneling of two alternate jurors, (2) in-viting error by allowing the trial court to excuse from the panel a juror originally chosen, and (3) not showing, before exercising its peremptory challenges, that Temple EasTex would exhaust its peremptory challenges and that specific objectionable jurors would remain on the alternate jury list.

### Preservation of Error

 In order to preserve a complaint for appellate review, a party must present to the trial court a timely request, stating the specific grounds for the ruling he desires the court to make, if the specific grounds are not apparent from the context. TEX.R.APP.P. 52(a); *Voth v. Felderhoff,* 768 S.W.2d 403, 412 (Tex.App.—Fort Worth 1989, writ denied). It is also necessary for the complaining party to obtain a ruling on its objection. TEX.R.APP.P. 52(a).

 The record shows that the trial court allowed both sides to prepare their strike lists but did not tell them that it would use alternates on the jury. In giving admonitory instructions to the jury panel, the trial judge explained the role of a juror in the forthcoming trial stating, "[O]nly 12 of you will be selected." The trial court did not mention the law's provision for having alternate jurors, nor did the court mention its intention to use alternates in this case.

After the attorneys completed the voir dire examination of the panel, the trial court instructed the attorneys to make their strikes and to give their lists to the bailiff. The trial court then informed the attorneys that the first twelve persons whose names were not stricken would make up the jury and that it would seat the next two consecutive, unstricken panelists as alternate jurors. Greener & Sumner objected to impaneling the alternate jurors on the ground that the Rules of Civil Procedure have no provision permitting the use of alternate jurors. The trial court overruled this objection. Temple EasTex then joined in the earlier objection and (1) added that the trial court had not allowed the parties to make strikes in contemplation of alternate jurors, (2) objected to the impan-

eling of the two alternate jurors, and (3) requested that the alternate jurors be dismissed or, alternatively, that the trial court grant an additional strike per side. The trial court responded that it would not allow any additional strikes, but would allow the parties an additional ten minutes to go back and change their strikes now that they were aware that there would be two alternates. Temple EasTex stood by its objection and declined to change its strikes. The trial court then administered the oath to the twelve regular and two alternate jurors, instructed them as to their duties, and excused them until the following day.

When the proceedings resumed the following day, the court and attorneys, out of the jury's presence, discussed what to do about one of the selected twelve regular jurors. The previous day, after the court dismissed the panel, a juror remained and informed the judge that he was not a patient person, had not expected to be chosen, and did not know whether he could "give a verdict." The court asked the attorneys if they would agree to the court excusing the juror. Greener & Sumner's attorney stated that he would have no objection, providing the court did not replace the excused juror with an alternate. Counsel for Temple EasTex then stated, "I don't have any objection to having him excused, but ...," when Greener & Sumner's attorney interjected and again objected to an alternate being used in deliberations. The court excused the juror, stating:

> There's no objection to discharging him, then we'll discharge him. We'll keep our jurors seated as we are. And we will then take up at the end of the trial who is left and we'll let you make your objections on the record as to whether one of the alternates can deliberate at that time....

At the close of the trial and immediately before Old Orchard's closing argument, the court announced that it was ready to take up the seating of the alternate juror, referred to as the "thirteenth juror," to participate in the jury's deliberations. Greener & Sumner objected and moved to strike the thirteenth juror because the trial court had not allowed each party an extra peremptory strike. Greener & Sumner added that, had it been given an extra strike, it would have exercised that strike against the thirteenth juror. After the court overruled the objection, counsel for Temple EasTex adopted Greener & Sumner's objection. The court then overruled the objection based on the belief that the parties made their strikes in anticipation of having jurors and alternates. The court seated the thirteenth juror.

Temple EasTex twice complained about the trial court not allowing an additional strike for alternate jurors and for the "thirteenth juror" in particular. Temple EasTex complained before the jury was impaneled and before the first alternate juror was included with the original eleven to undertake deliberations. Temple EasTex made its first objection as soon as the court made it aware that alternate jurors would be selected. The objection was made in time for the trial court to allow the extra peremptory strike and prevent any error. Further, Temple EasTex did not know that the trial court would seat alternate jurors *until after it had used its peremptory challenges and after one of the original jurors had been discharged.* Temple EasTex made its objections concerning the seating of the alternate juror pursuant to the trial court's instructions. Temple EasTex, therefore, made timely and specific objections, did not invite error, and could not object to exhausting its peremptory challenges concerning alternate jurors at the time Old Orchard insists that it should have. Because Temple EasTex made timely, specific objections and obtained rulings thereon, Temple EasTex preserved its right to complain.

### Error

To obtain reversal of a judgment based upon an error in the trial court, the appellant must show first that there was error and that such error was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment. TEX.R.APP.P. 81(b); *Life Ins. Co. v. Brister,* 722 S.W.2d 764, 775 (Tex.App.—Fort Worth 1986, no writ). We can set

aside or reverse judgments for errors of law committed during the trial only if, in our sound judgment, the errors contributed in a substantial way to bring about an improper judgment. TEX.R.APP.P. 81(b); *Life Ins. Co.*, 722 S.W.2d at 775.

Section 62.020 of the Texas Government Code provides:

(a) In district court, the judge may direct that not more than four jurors in addition to the regular jury be called and impaneled to sit as alternate jurors.

. . . .

(e) Each side is entitled to one peremptory challenge in addition to those otherwise allowed by law or by rule if one or two alternate jurors are to be impaneled. Each side is entitled to two peremptory challenges in addition to those otherwise allowed by law or by rule if three or four alternate jurors are to be impaneled. The additional peremptory challenges may be used against an alternate juror only, and the peremptory challenges allowed by law or by rule may not be used against an alternate juror.

TEX.GOV'T CODE ANN. § 62.020(a), (e) (Vernon 1988).

We have not found, and Temple EasTex has not cited, a Texas case dealing with a trial court's failure to follow section 62.020(e). It is a cardinal rule of statutory construction that each word is to be given effect if reasonable and possible. *Perkins v. State*, 367 S.W.2d 140, 146 (Tex.1963). The word "entitled," as used in the statute, means "give a right or legal title to." BLACK'S LAW DICTIONARY 532 (6th ed. 1990).

Each side had the right to an additional peremptory challenge when the court said it would impanel the two alternates. Because the statute mandates additional peremptory challenges when the trial court impanels alternate jurors, the trial court committed error in refusing Temple EasTex an additional peremptory challenge.

### Harm

In reviewing the error's effect, we must determine from the record as a whole whether the appellant was harmed by the trial court's error. *Life Ins. Co.*, 722 S.W.2d at 775. There are no cases on point that give us a standard of review. We therefore look to similar situations arising when trial courts have not equalized strikes as required by rule 233 of the Texas Rules of Civil Procedure. *See* TEX.R.CIV.P. 233. In those cases, once an appellant shows that it did not receive its entitled number of peremptory challenges, the appellant need show only that the error resulted in a "materially unfair trial." *Lopez v. Foremost Paving, Inc.*, 709 S.W.2d 643, 644 (Tex. 1986). This test is less stringent than the traditional "harmless error rule." *Id.* It is met if the record as a whole shows that the trial was hotly contested and that the evidence was sharply conflicting. *Id.; see also Vargas v. French*, 716 S.W.2d 625, 627 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.).

The record shows that the parties contested the cause and origin of the fire. Old Orchard based its products liability claim on the theory of inadequate warning by Temple EasTex of the fire risk associated with the use of its fiberboard. Old Orchard also based its products liability claim on the theories of defective manufacture and design of the fiberboard. Temple EasTex contends that the warning was adequate and that the contractors and supervisors were at fault in allowing unlicensed plumbers to work without supervision using methods in violation of the applicable fire codes. To counter the defective-design claim, Temple EasTex questioned Old Orchard's expert, who admitted that the flame from the plumber's torch, not the fiberboard's proximity to the flame, produced the fire hazard. In this case, the potential liability of many different parties is at issue and is hotly contested. The record as a whole shows that this case was hotly contested and that the evidence was sharply conflicting.

Additionally, a verdict may be rendered in any cause by the concurrence of ten of the twelve original jurors. TEX.R.CIV.P. 292. The jury verdict was ten to two against appellants. When the trial court individually polled the jurors, the alternate

juror was one of the ten jurors who had voted for the verdict. The error caused rendition of an improper verdict because the verdict was not rendered by ten of the original twelve jury members. Without the alternate juror, no verdict would have been rendered against Temple EasTex, because only nine of the original twelve jurors were in favor of the verdict. We conclude that the trial court's error resulted in a materially unfair trial. Because the jury, without the alternate juror, would not have rendered a verdict against Temple EasTex, the error in disallowing Temple EasTex an additional peremptory challenge for the alternate juror caused harm. We sustain Temple EasTex's fifth and sixth points of error.

## CONCLUSION

We reverse the trial court's judgment as to Red Gillard and Greener & Sumner and render judgment that all parties take nothing from Red Gillard and Greener & Sumner. Because the trial court improperly seated the alternate juror, we remand the remainder of this cause to the trial court for proceedings consistent with this opinion.