**INDIANA INSURANCE COMPANY,
as Subrogee of Olivet College,**

**v.**

**Bernard ERHLICH, Individually and as a partner in WBTL Architects; Fredric M. Bell, Individually and as a partner in WBTL Architects; WBTL Architects, Planners & Interior Designers; Severud Associates; Holland Construction Company, Inc. Soil and Material Engineers, Inc.; D & J Excavating; and C.E. Hess and Sons, Defendants.**

No. 1:92–cv–499.

United States District Court,
W.D. Michigan,
Southern Division.

Feb. 7, 1994.

514

Curt A. Benson, Denenberg, Tuffley & Jamieson, PC, Grand Rapids, MI, A. Richard Bailey, Cozen & O'Connor, Philadelphia, PA, Michelle F. Kitch, Morrison, Mahoney & Miller, Grand Rapids, MI, for Indiana Ins. Co.

William L. Kiriazis, Vandeveer, Garzia, PC, Detroit, MI, for Bernard Erhlich, Frederick M. Bell, WBTL Architects, Planners & Interior Designers.

James M. Cameron, Jr., Dykema, Gossett, PLLC, Ann Arbor, MI, for Severud Associates.

Drew F. Seaman, Sandra K. Visser, Straub, Seaman & Allen, St. Joseph, MI, for Holland Constr. Co., Inc.

Michael H. Whiting, Stark, Reagan & Finnerty, Troy, MI, for Soil and Material Engineers, Inc.

Robert B. Aardema, Bensinger, Cotant, Menkes & Aardema, PC, Grand Rapids, MI, for D & J Excavating.

Joseph A. Byrne, Jr., Ford, Kriekard, Domeny & Byrne, PC, Portage, MI, for C.E. Hess and Sons.

## OPINION ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

MILES, Senior District Judge

This matter is before the court on the motions of the defendants for summary judgment (docket nos. 27, 32, 34, 35, 36, and 37). Plaintiff has opposed these motions. For the reasons to follow, the court hereby **GRANTS** the motions to the extent that they seek dismissal of all claims with the exception of any claims of gross negligence.

*I*

Olivet College is a small liberal arts college located in Olivet, Michigan. The college consists of 14 principal buildings, the majority of which are situated on an 80–acre campus. One of these buildings is Burrage Library (hereinafter the "old library"), originally built in 1890.

On October 21, 1987 Olivet entered into a contract with defendant WBTL Architects, Planners & Interior Designers ("WBTL"), a New York design firm which specializes in the construction, renovation, and rehabilitation of college and university libraries. WBTL agreed to perform certain professional services in connection with the design and construction of an addition to and renovation of Olivet's old library. Defendants Bernard Erhlich and Fredric M. Bell, both partners in WBTL, undertook certain responsibilities with respect to the Olivet project. Sometime after October 21, 1987, WBTL contracted with defendant Severud Associates ("Severud"), also a New York firm, to provide structural engineering services and consultation on the project. In October, 1990, Olivet contracted with defendant Soil and Material Engineers, Inc. ("SME"), a Michigan corporation, which agreed to perform quality control and material testing services in connection with the construction of the library addition.

Defendant Holland Construction Company, Inc. ("Holland"), is a Michigan corporation engaged in the business of commercial and residential construction. On December 19, 1990, Olivet entered into a contract with Holland for the construction of the library addition and renovation of the old library. Sometime later, Holland subcontracted with defendant C.E. Hess and Sons ("C.E. Hess"), a Michigan corporation engaged in the business of construction, excavation, and concrete contracting, to perform the concrete and excavation work at the site of the library addition. C.E. Hess, in turn, subcontracted with another firm, D & J Excavating ("D & J"), a Michigan corporation, to excavate and clear the site where the addition was to be built.

On January 17, 1991, after D & J had performed its excavation work for the library addition, the east wall of the old library collapsed, causing extensive damage to the

building and its contents. At the time of the collapse, Olivet maintained property insurance with plaintiff Indiana Insurance Company ("Indiana"), an Indiana corporation. Indiana paid Olivet $493,786 for the loss.

Indiana filed this action seeking to enforce what it contends is its contractual and equitable right of subrogation against each of the defendants in connection with the library collapse. In its complaint, Indiana has asserted multiple claims against the various defendants, including negligence, breach of warranty, and breach of contract. Each of the defendants has moved for summary judgment under Fed.R.Civ.P. 56.

## II

The contract between Holland and Olivet contained the following provision:

**11.3.7 Waivers of Subrogation.** The Owner and Contractor waive all rights against (1) each other and any of their subcontractors, sub-subcontractors, agents and employees, each of the other, and (2) the Architect, Architect's consultants, separate contractors described in Article 6, if any, and any of their subcontractors, sub-subcontractors, agents and employees, for damages caused by fire or other perils to the extent covered by property insurance obtained pursuant to this Paragraph 11.3 or other property insurance applicable to the Work, except such rights as they have to proceeds of such insurance held by the Owner as fiduciary. The Owner or Contractor, as appropriate, shall require of the Architect, Architect's consultants, separate contractors described in Article 6, if any, and the subcontractors, sub-subcontractors, agents and employees of any of them, by appropriate agreements, written where legally required for validity, similar waivers each in favor of other parties enumerated herein. The policies shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subroga-

tion shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.

Holland's Motion for Summary Judgment, Exhibit B at p. 21.[1] Under this contract, "the Work" is defined as

the construction and services required by the Contract Documents, whether completed or partially completed, and includes all other labor, materials, equipment and services provided or to be provided by the Contractor to fulfill the Contractor's obligations. The Work may constitute the whole or a part of the Project.

*Id.* at p. 6, ¶ 1.1.3. The "Project" is identified as "Olivet College Library: Expansion & Renovation." *Id.* at p. 1.

The contract between WBTL and Olivet contained a similar waiver provision, which reads as follows:

**11.4** The Owner and the Architect waive all rights against each other and against the contractors, consultants, agents and employees of the other for damages covered by any property insurance during construction as set forth in the edition of AIA Document A201, General Conditions, current as of the date of this Agreement. The Owner and the Architect each shall require appropriate similar waivers from their contractors, consultants and agents.

WBTL's, Ehrlich's, and Bell's Motion for Summary Judgment, Exhibit A at p. 8.[2]

## III

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

---

1. The Holland/Olivet contract consists substantially of the 1987 Edition of American Institute of Architects ("AIA") Document A101, entitled "Standard Form of Agreement Between Owner and Contractor," and the 1987 Edition of AIA Document A201, entitled "General Conditions of the Contract for Construction."

2. The WBTL/Olivet contract, which consists of the 1977 Edition of AIA Document B141, "Standard Form of Agreement Between Owner and Architect," incorporates by reference a portion of AIA Document A201 and therefore incorporates the Holland/Olivet contract.

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In evaluating a motion for summary judgment, the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). While inferences drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Only factual disputes which may have an effect on the outcome of a lawsuit under the applicable substantive law are "material." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

A party seeking summary judgment bears the initial responsibility of identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Once the motion has been made and supported, the nonmoving party must go beyond the pleadings and provide the court with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106

S.Ct. at 2553. If the nonmoving party has not had an opportunity to make full discovery, summary judgment may be denied or a hearing of the motion may be continued, in accordance with Fed.R.Civ.P. 56(f). *Celotex,* 477 U.S. at 326, 106 S.Ct. at 2554.

## IV

■ The defendants argue that the language contained in the Holland/Olivet and WBTL/Olivet contracts represents a release and waiver of all claims against them by Olivet, and therefore bars Indiana's claims against them as subrogee of Olivet. A subrogee acquires no greater rights than those possessed by its subrogor. *Northwestern Mutual Ins. Co. v. Jackson Vibrators, Inc.,* 402 F.2d 37, 40 (6th Cir.1968); *Commercial Union Ins. Co. v. Medical Protective Co.,* 426 Mich. 109, 393 N.W.2d 479, 482 (1986). Therefore, Indiana's claims against the defendants are subject to any defenses which the defendants have against Olivet, including release and waiver.[3]

■ It is not contrary to Michigan's public policy for a party to contract against liability for damages caused by ordinary negligence. *Paterek v. 6600 Ltd.,* 186 Mich.App. 445, 465 N.W.2d 342, 344 (1990). "As with other contracts, the validity of a contract of release turns on the intent of the parties." *Id.* (citation omitted). "To be valid, a release must be fairly and knowingly made." *Id.* Olivet is clearly a signator to the contracts in which the releases are contained, and no showing of fraud or mistake has been made.[4]

---

**3.** Indiana argues that it cannot be bound by a waiver of subrogation to which it was not a party and of which it was not aware. Indiana's professed lack of awareness of the waiver is irrelevant, however, because its insurance contract with Olivet allows Olivet to make such a waiver. One of the conditions of Olivet's policy with Indiana provides in pertinent part as follows:

. If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. *But you may waive your rights against another party in writing:*

1. *Prior to a loss to your Covered Property or Covered Income.*

Plaintiff's Response to Defendants' Motions for Summary Judgment, Exhibit J (emphasis supplied).

**4.** Indiana argues that although discovery is not yet completed, "plaintiff is unaware that there has been any evidence that Olivet was even aware of the waiver of subrogation clause, buried deep within a preprinted standard form A201, much less that its insurer, Indiana, was so aware." However, "one who signs a contract cannot seek to invalidate it on the basis that he or she did not read it ... absent a showing of , fraud or mutual mistake." *Paterek,* 465 N.W.2d at 345.

The WBTL/Olivet contract is governed by New York rather than Michigan law. However, under New York law, Indiana's claims against WBTL, Erhlich, Bell, and Severud are likewise barred by

Indiana raises a number of arguments in an attempt to avoid the effect of Olivet's release. First, Indiana contends that the defendants cannot take refuge in the waiver provision because they breached material provisions of the contract. More specifically, Indiana argues that Holland breached its contractual duty to take reasonable precautions for the safety of property at the construction site, Exhibit E, to take precautions to protect against collapse, Exhibit G, and to shore or brace the wall of the old library during excavation. *Id.* Indiana contends that because they have violated the contract, the defendants cannot assert a provision of the contract as a defense to an action on it. *Verran v. Blacklock*, 60 Mich. App. 763, 231 N.W.2d 544, 547 (1975).

This principle, however, is not applicable under the facts of this case. Parties may contract to limit their liability in the event of a breach. *See, e.g., Moore v. St. Clair County*, 120 Mich.App. 335, 328 N.W.2d 47, 49–50 (1982) (holding liquidated damages provision to be valid). Indeed, as the defendants have ably noted, to give effect to Indiana's argument would be to render the waiver clauses meaningless:

> Parties to contracts routinely include provisions for what will happen in the event of unforeseen occurrences, including breach. Modifications and limitations of remedies, such as liquidated damages clauses or waivers of some or all causes of action, are common provisions. If such clauses were enforceable only when no party alleges breach, they would be meaningless. In any case in which a breach is alleged, the party seeking to enforce a limitation of remedies or waiver of claims would first have to go through an entire trial to establish innocence of breach, so as to be able to use the limitation or waiver clause. At

that point, of course, the clause itself becomes irrelevant, since the defendant has not breached the contract. Thus, Plaintiff's theory deprives these clauses, which are routinely inserted in contracts and relied on by the parties, of any meaning.

\*   \*   \*   \*   \*   \*

> A waiver clause is a mechanism for reducing litigation by preventing claims from arising, and by substituting the contractual protection of insurance for the uncertain and expensive protection of liability litigation.

WBTL, Ehrlich, and Bell's Reply Brief in Support of Motion for Summary Disposition at p. 3. The court adopts this reasoning, and concludes that no genuine issue of material fact is raised by Indiana's allegation of breach.

Indiana also argues that the clauses are not sufficiently clear to be enforceable. Under Michigan law, "[i]n order for a party to disclaim liability for its own negligence, the contract must contain a clear and unequivocal expression of such an intent." *American Empire Ins. Co. v. Koenig Fuel & Supply Co.*, 113 Mich.App. 496, 317 N.W.2d 335, 337 (1982). The waiver clauses at issue could not be more clear. However, Indiana argues that because the waivers do not specifically provide that the defendants are not liable for their own negligence, and because the contracts place certain duties of care on the defendants, at a minimum a genuine issue of material fact remains concerning whether the parties truly intended such a waiver. The court finds this argument to be without merit. A contract provision purporting to relieve a party from liability for negligence need not contain the word "negligence" in order to be enforceable. *See Paterek*, 465 N.W.2d at 344.[5]

waiver. *Trump–Equitable Fifth Avenue Co. v. H.R.H. Construction Corp.*, 106 A.D.2d 242, 485 N.Y.S.2d 65 (N.Y.App.Div.), aff'd, 66 N.Y.2d 779, 497 N.Y.S.2d 369, 488 N.E.2d 115 (N.Y.1985) (holding that an AIA A201 form contract waiver of subrogation barred insurer's claims against contractor and subcontractors for fire damages sustained to building under construction). Cf. *S.S.D.W. Co. v. Brisk Waterproofing Co.*, 76 N.Y.2d 228, 557 N.Y.S.2d 290, 556 N.E.2d 1097 (N.Y.1990) (holding that similar provision con-

tained in AIA form contract for "construction projects of limited scope" did not bar insurer's subrogation claim for fire damages occurring to property *not included within "the Work"*).

5. The Holland/Olivet and the WBTL/Olivet contract provisions do place certain duties on the defendants in connection with the construction project. However, these provisions do not create an ambiguity when read together with the waiver provisions. Whatever duties the defendants have

■ Indiana further argues that the waivers are contrary to public policy and are therefore unenforceable. M.C.L.A. § 691.991, on which Indiana relies in support of this argument, provides as follows:

A covenant, promise, agreement or understanding in, or in connection with or collateral to, a contract or agreement relative to the construction, alteration, repair or maintenance of a building, structure, appurtenance and appliance, including moving, demolition and excavating connected therewith, purporting to indemnify the promisee against liability for damages arising out of bodily injury to persons or damage to property caused by or resulting from the sole negligence of the promisee or indemnitee, his agents or employees, is against public policy and is void and unenforceable.

Under this statute, a provision which guarantees indemnification for the sole negligence of the indemnitee is void as against public policy. However, the provisions at issue in this case do not call for indemnification. The parties merely agreed that they would not sue one another; no party is required to restore any loss suffered by any other party. *See* Black's Law Dictionary 692 (5th Ed.1979), which defines "indemnify" as

to restore the victim of a loss, in whole or in part, by payment, repair, or replacement. To save harmless; to secure against loss or damage; to give security for the reimbursement of a person in case of an anticipated loss falling upon him. To make good; to compensate; to make reimbursement to one of a loss already incurred by him.

Even assuming, however, that the waivers at issue could be characterized as indemnity agreements, they are not voided by § 691.991. Under that statute, which prohib-

its guarantees of indemnification for the sole negligence of the indemnitee, "a provision which seeks to indemnify a promisee against liability for its own negligence is valid in the case of concurrent negligence by multiple tortfeasors." *Harbenski v. Upper Peninsula Power Co.*, 118 Mich.App. 440, 325 N.W.2d 785, 791 (1982). Indiana has alleged negligence against several parties, and therefore § 691.991 does not apply.

*V*

Indiana contends that not all of the moving defendants are entitled to rely on the waiver contained in ¶ 11.3.7 of the Holland/Olivet contract. More specifically, Indiana argues that serious factual and/or legal questions exist as to the status of D & J as a "subcontractor" and the status of SME as a "separate contractor" as defined by the contract.

■ No genuine issue of material fact exists regarding D & J's status as a "subcontractor." Indiana's own complaint specifically alleges that Hess "subcontracted with Defendant, D & J Excavating, to excavate and clear the site where the New Library was to be constructed." Complaint, p. 6, ¶ 17. Indiana cannot contradict the allegations of its own complaint in order to create a genuine issue of fact and thereby avoid summary judgment.[6]

■ Indiana's argument that SME cannot rely on the waiver contained in ¶ 11.3.7 of the Holland/Olivet contract, which covers "separate contractors" is similarly flawed. Indiana's own complaint alleges that on or about October 12, 1990, Olivet contracted with SME to provide quality control and material testing services for the construction of the library addition. *Id.*, p. 5, ¶ 14. Under article 6 of the Holland/Olivet contract,

---

agreed to undertake, under the waiver provisions Olivet agreed to waive its rights against the defendants for damages, to the extent that such damages were covered by property insurance applicable to "the Work."

**6.** Indiana's assertion that a fact issue remains as to D & J's status is based on a statement contained in Hess' brief that "Hess subcontracted some work to D & J though not, it believes, the work D & J was performing at the time of the

wall collapse." Brief of Defendant C.E. Hess and Sons in Support of Motion for Summary Judgment at p. 2. Assuming that Indiana can rely on a statement made in a co-defendant's brief in order to oppose D & J's motion for summary judgment, Indiana has failed to show how the issue of *who* hired D & J is relevant to the motions. Even Hess itself, on whom Indiana relies to dispute D & J's status, states that this fact issue "is not material to this Motion[.]" *Id.*

specifically ¶ 6.1.1, Olivet reserved the right to

> perform construction or operations related to the Project with the Owner's own forces, and to award separate contracts in connection with other portions of the Project or other construction or operations on the site under Conditions of the Contract identical or substantially similar to these including those portions related to insurance and waiver of subrogation....

Indiana argues that this provision limits the definition of "separate contractors" to those who have a contract with Olivet which contains terms "identical or substantially similar" to those contained in the Holland/Olivet contract. SME disputes this reading of the definition, contending that the language contained in ¶ 6.1.1 is intended to reserve to Olivet broad rights to hire its own separate contractors and that the above quoted language is that of inclusion, not limitation. Moreover, SME argues, the terms of its own contract with Olivet are not inconsistent with those of the Holland/Olivet contract. *See* Defendant Soil and Materials Engineers, Inc.'s Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment, Exhibit 1. The court finds it unnecessary to resolve this dispute for purposes of this motion, however, because based on Indiana's own complaint, it is clear that SME was hired by Olivet to perform work on the project. If Olivet breached its contract with Holland by hiring an outside contractor without complying with the terms of ¶ 6.1.1 and insisting on identical contract provisions, then Indiana, as subrogee of Olivet, is hardly in a position to complain.[7]

■ Even if Olivet's failure to include a waiver of subrogation provision in SME's contract could somehow remove SME from the definition of "separate contractor" contained in the Holland/Olivet contract, SME nonetheless falls under the protection of the waiver clause contained in the latter contract by virtue of Michigan's third party beneficiary statute, M.C.L.A. § 600.1405. This statute provides in pertinent part as follows:

> Any person for whose benefit a promise is made by way of contract, as hereinafter defined, has the same right to enforce said promise that he would have had if the said promise had been made directly to him as the promisee.
>
> **(1) Contracts included.** A promise shall be construed to have been made for the benefit of a person whenever the promisor of said promise has undertaken to give or to do or refrain from doing something directly to or for said person.

In applying § 600.1405, "[o]ne must 'use an objective standard to determine whether a [party] is a third-party beneficiary under the statute.'" *Taggart v. United States*, 880 F.2d 867, 869 (6th Cir.1989) (citations omitted). "The contract itself reveals the parties' intentions." *Id.* Here, there can be no doubt that based on the Holland/Olivet contract language, Olivet promised "to do or refrain from doing something directly to or for" SME—to waive its subrogation rights.

## VI

■ Were it not for one remaining issue, relegated by Indiana to one short footnote in its responsive brief, the court would conclude that this entire action is subject to dismissal on the basis of waiver. What is the issue which prevents dismissal of this action? Gross negligence. More specifically, Indiana contends that

> ... Michigan law is clear that a party may never contract against liability for harm caused by its own *gross* negligence. *See, Shelly [sic] Mutual Ins. Co. v. City of Grand Rapids*, 6 Mich.App. 95, 148 N.W.2d 260 (1967). As discovery is not yet complete, the granting of summary

---

7. Indiana also argues that SME could not be a "separate contractor" within the meaning of the Holland/Olivet contract because the Holland/SME contract predates the Holland/Olivet contract by approximately three months. However, there is nothing contained in Article 6 of the Holland/Olivet contract which restricts Olivet's right to continue working with separate contractors which it hired before signing the contract with Holland. Moreover, SME has presented unrefuted evidence showing that a project manual prepared by WBTL in May, 1990 contained a copy of the AIA General Conditions, including the waiver at issue, *see* SME Reply, Exhibit 2, and that Holland was allowed to proceed with its work as early as October 10, 1990—before it had even signed a formal contract with Olivet. *See id.*, Exhibit 3.

judgement at this juncture would be, at best, premature.

Plaintiff's Brief in Opposition to Defendants' Motions for Summary Judgment at p. 32 n. 13. *Shelby Mutual Ins. Co. v. City of Grand Rapids,* cited by plaintiffs, does indeed appear to support the proposition for which Indiana has cited it. 148 N.W.2d at 262. Although each of the defendants has filed two briefs in connection with their respective motions for summary judgment, none of them have addressed the issue of gross negligence. Accordingly, although the court will grant summary judgment on all other claims, the court will not, at this juncture, dismiss the action in its entirety.[8]

### CONCLUSION

The court concludes that there is no genuine issue of material fact and that Indiana's claims, with the exception of any claims of gross negligence, are barred by Olivet's contractual releases. Any arguments made by Indiana in opposition to the defendants' motions and not specifically addressed herein are rejected by the court as being without merit. Summary judgment will be entered on the following counts of Indiana's complaint: Count II, Count IV, Count VI, Count VII, Count IX, Count XI, Count XII, Count XIV, Count XV, Count XVII, and Count XIX.

### ORDER GRANTING SUMMARY JUDGMENT

In accordance with the Opinion of the court issued this same date, summary judgment is hereby entered on the following counts of the complaint: Count II, Count IV, Count VI, Count VII, Count IX, Count XI, Count XII, Count XIV, Count XV, Count XVII, and Count XIX.

---

8. The court expresses no opinion on whether Indiana's complaint sufficiently alleges or otherwise states a claim for gross negligence against the defendants, however that concept may be presently defined by Michigan law. *See Miller v. United States of America, Department of the Interior,* 649 F.Supp. 444, 450 (W.D.Mich.1986) (observing that "[t]he pronouncements of Michigan's appellate judiciary concerning the concept of gross negligence and willful and wanton misconduct has [sic] been 'confused and disparate' "). As this particular issue has not been addressed by any of the defendants, the court will likewise decline to address it.