# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00228-CV

**Austin Independent School District, Appellant**

**v.**

**H. C. Beck Partners, Ltd., Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT
NO. D-1-GV-07-000452, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

This is an appeal of a summary judgment in favor of a general contractor in a suit for breach of a construction contract. The claims in the suit were filed by the property owner. However, what is at issue is the status of the subrogation rights of the owner's insurer and the effect of certain contractual provisions on those rights. We reverse the summary judgment and remand for further proceedings consistent with this opinion.

Appellant Austin Independent School District (AISD) contracted with appellee H. C. Beck Partners, Ltd. for mold remediation and renovations to an elementary school. In the course of the work, temporary roofing installed by a subcontractor of H. C. Beck failed to remain watertight during a rainstorm. The cost to repair the resulting damage to the building and its contents was paid by AISD's insurance carrier, Travelers Lloyds Insurance Company. AISD filed this suit against H. C. Beck and other parties on August 25, 2003. In accordance with the insurance policy,

Travelers is subrogated with respect to AISD's claims. H. C. Beck filed a motion for summary judgment asserting that Travelers had no right of subrogation or, alternatively, if Travelers had a right of subrogation, AISD breached the construction contract by failing to obtain an insurance policy that included a waiver of subrogation rights, and thereby released or waived its claims against H. C. Beck. The district court granted H. C. Beck's motion for summary judgment on AISD's claims against H. C. Beck without specifying a basis. AISD appeals the judgment.[1]

This appeal concerns contract provisions relating to subrogation rights in two separate agreements. The construction contract between AISD and H. C. Beck contains the following provision relating to a requirement for AISD to obtain insurance:

8.2    INSURANCE REQUIRED OF [AISD]

During both phases of the Project, [AISD] shall purchase and maintain liability and property insurance, including waivers of subrogation.

AISD's insurance policy agreement with Travelers contains the following provision relating to subrogation of rights:

If any person or organization to or for whom [Travelers] makes payment under this policy has rights to recover damages from another, those rights are transferred to [Travelers] to the extent of such payment. That person or organization must do everything necessary to secure [Travelers's] rights and must do nothing after the loss

---

[1] AISD originally filed a notice of appeal on July 20, 2006. This Court dismissed the appeal for lack of jurisdiction because the cause remained pending in the trial court on other claims, and the trial court had not entered a final and appealable order. *See Austin Indep. Sch. Dist. v. H. C. Beck Parts., Ltd.*, No. 03-06-00502-CV (Tex. App.—Austin Dec. 8, 2006) (mem. op.). On March 21, 2007, the trial court severed AISD's claims against H. C. Beck from the other claims pending in the trial court.

to impair them. [Travelers] will be entitled to priority of recovery against any such third party (including interest) to the extent payment has been made by [Travelers], plus attorney's fees, expenses or costs incurred by [Travelers].

But, [AISD] may waive its rights against another party by specific written agreement . . . .

H. C. Beck asserted three grounds for summary judgment with respect to AISD's claims: (1) the construction contract provision requiring AISD to purchase an insurance policy that included a waiver of subrogation acts as a waiver of AISD's claims because Travelers is subrogated to AISD's claims; (2) alternatively, if the provision in the construction contract does not act as a waiver of AISD's claims, then AISD's failure to obtain an insurance policy with an effective waiver-of-subrogation clause was a material breach of the construction contract that operates as a release of AISD's claims; and (3) AISD's contractual representation that it would obtain an insurance policy with a waiver of subrogation and breach of that representation constituted a waiver of any claims that it may have had against H. C. Beck.

We review summary judgments de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). Under the standard applicable to a traditional motion for summary judgment, the motion should be granted only when the movant establishes that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). In reviewing a motion for summary judgment, we accept as true all evidence favoring the non-movant, making every reasonable inference and resolving all doubts in the non-movant's favor. *See Nixon*, 690 S.W.2d at 548-49. We will affirm the summary judgment if any ground presented to the district

3

court is meritorious. *See Pickett v. Texas Mut. Ins. Co.*, 239 S.W.3d 826, 840 (Tex. App.—Austin 2007, no pet.).

We first consider H. C. Beck's argument that the construction contract's provision requiring AISD to purchase an insurance policy that includes a waiver of subrogation operates, by itself, to waive AISD's claims in this lawsuit because Travelers is asserting a subrogation interest in AISD's claims.[2]  As an initial matter, the plain language of the construction contract provision does not purport to waive subrogation rights by anyone against anyone.  The provision requires AISD to obtain a liability insurance policy that includes "waivers of subrogation."  AISD either obtained such an insurance policy or it did not and, thus, either performed its obligations under this provision or not.  AISD did not waive its insurer's subrogation rights under this provision.  The construction contract provision is an agreement by AISD to procure insurance containing "waivers of subrogation."  It is not, itself, a waiver of subrogation rights.  Such a waiver must be part of the insurance policy obtained by AISD.[3]

---

[2]  The parties do not dispute that AISD is pursuing the claims in this case in the interest of its subrogee, Travelers.

[3]  The dissent fails to cite to any case—state or federal—holding that a party's contractual agreement to obtain an insurance policy with a waiver-of-subrogation clause is sufficient, by itself, to waive the insurer's right of subrogation.  There is no authority to this effect because the dissent's position conflates a release of claims by a party who owns the claims with a waiver of subrogation rights by a surety or insurer that has a subrogation interest in the claims.  In each of the cases cited by the dissent, the contract at issue expressly released claims between the insured and the party against whom claims are being made.  *See TX. C.C., Inc. v. Wilson/Barnes Gen. Contractors, Inc.*, 233 S.W.3d 562, 565 (Tex. App.—Dallas 2007, pet. denied) ("The Owner and Contractor waive all rights against each other"); *Walker Eng'g, Inc. v. Bracebridge Corp.*, 102 S.W.3d 837, 839 (Tex. App.—Dallas 2003, pet. denied) ("The Owner and Contractor waive all rights against each other"); *Indiana Ins. Co. v. Erhlich*, 880 F. Supp. 513, 516 (W.D. Mich. 1994) ("The Owner and Contractor waive all rights against . . . separate contractors").  The insurer in those cases could not recover as subrogee because there were no claims existing for the insurer to be subrogated to—the

4

It is not uncommon for an owner or other party in a construction project hierarchy to agree to provide insurance that includes waivers of subrogation. Such waivers may come in a variety of forms. For example, an insurer might expressly agree in the insurance policy to waive subrogation rights as to any party for whom the policyholder has agreed to provide such a waiver. *See, e.g.*, *Chevron U.S.A., Inc. v. Cigna Ins. Co.*, No. 09-97-00032-CV, 1998 Tex. App. LEXIS 5043, at *8-9 (Tex. App.—Beaumont Aug. 13, 1998, pet. denied) (not designated for publication). An insurer might also agree—as was done here—that a policyholder may under certain circumstances release its claims against a third party thereby extinguishing any subrogated claims by the insurer. In this case, however, the insurance policy obtained by AISD does not waive the insurer's subrogation

---

insured had released *its* claims. *See TX. C.C.*, 233 S.W.3d at 573-74; *Walker Eng'g*, 102 S.W.3d at 844; *Indiana Ins. Co.*, 880 F. Supp. at 519-20.

Subrogation rights, when they exist, belong to the subrogated party. In the situation presented here, these rights belong to and are waivable by the insurer—not the insured. Certainly, an insurer may, by contract, waive its subrogation rights based on some action by the insured such as allowing the insured to release its claims without obtaining the consent of the insurer who holds subrogation rights. However, this does not change the fact that subrogation rights are the subrogated party's rights to waive. An insured can affect a subrogated insurer's rights by releasing claims the *insured* has against third parties, and this may or may not be a breach of the insurance contract. However, this type of elimination of subrogation rights depends on a release or waiver by the insured of claims owned by the insured against a third party. In such a situation, the subrogated party's subrogation rights are eliminated because the underlying claim was eliminated, not because subrogation was waived. This sort of effect on subrogation rights does not follow from any sort of waiver by the insurer of its subrogation rights unless the insurer has expressly granted that power to the insured by agreement.

In this case, the construction contract between AISD and H. C. Beck does not release AISD's claims against H. C. Beck that are asserted in this lawsuit, and the insurance contract neither waived Travelers's subrogation rights nor granted authority to AISD to waive Travelers's subrogation rights. The insurance contract granted AISD the authority to release its claims against H. C. Beck without such a release constituting a breach of the insurance agreement—authority AISD has not exercised.

5

rights against anyone. It allows AISD to release or waive claims by "specific written agreement" under certain circumstances. Such a release or waiver of claims, if made in compliance with the insurance policy, would have the effect of extinguishing Traveler's subrogation rights because it would extinguish the claims from which those rights would arise. However, H. C. Beck does not contend here that AISD has "by specific written agreement" released or waived the claims at issue in this lawsuit. H. C. Beck argues that AISD agreed to provide insurance with waivers of subrogation and that this agreement, by itself, accomplishes the waiver. However, without either an express waiver of subrogation by the insurer or a release or waiver of claims by the insured in this case, the insurer's subrogation rights remain governed by its policy with the insured.

Even if the construction contract provision could be read to be an attempt by AISD to waive subrogation rights on behalf of its insurer, it is not at all clear that such an attempt would operate to release or waive AISD's claims in this case. Because we find that the construction contract provision between H. C. Beck and AISD does not purport to waive subrogation rights on the part of AISD's insurer, we do not express an opinion on the merits of the effect such a provision would have on claims such as those filed by AISD in this case.

In addition, the plain language of the insurance policy between AISD and Travelers does not waive Travelers's right to subrogation with respect to AISD's claims against H. C. Beck. To the contrary, the policy provides that any right of AISD to recover damages for which Travelers has made payment is transferred to Travelers to the extent of such payment. The policy does contemplate AISD's ability to waive its rights of recovery against a third party such as H. C. Beck by written agreement, but as we have stated, the construction contract's procurement-of-insurance

6

provision does not accomplish this, nor does any other agreement in the record. H. C. Beck does not identify any other provision of the construction contract that operates to waive AISD's claims in connection with the damages at issue in this suit.[4] Consequently, the first ground for summary judgment asserted by H. C. Beck cannot support summary judgment.

In its second and third grounds for summary judgment, H. C. Beck asserted—in the alternative—that AISD's failure to obtain an insurance policy that included an effective waiver of subrogation rights was a breach of the construction contract, and that the breach operated as either a release or a waiver of AISD's claims. We offer no opinion on the merits of this contention or on the effect of a possible breach of the procurement-of-insurance provision by AISD on its ability to pursue claims or obtain a remedy against H. C. Beck. Although part of its motion for summary judgment, this was not the theory on which H. C. Beck sought and obtained summary judgment in the district court. H. C. Beck concedes that the record—as it currently stands—will not support a summary judgment on the basis that a breach of the construction contract by AISD operated to release or waive claims as a matter of law.

---

[4] H. C. Beck contends that *Chevron U.S.A., Inc. v. Cigna Insurance Co.*, No. 09-97-00032-CV, 1998 Tex. App. LEXIS 5043 (Tex. App.—Beaumont Aug. 13, 1998, pet. denied) (not designated for publication), is instructive here. In that case, the insurance policy waived subrogation rights as to "[a]ny person or organization for whom the Named Insured has agreed by written contract to furnish this waiver." *Id.* at *8-9. The court held that this language in the policy was not ambiguous and operated to waive subrogation rights against any party the insured had agreed to provide a waiver of subrogation. However, in *Chevron U.S.A.*, the contract between the insured and the third party challenging the existence of subrogation rights expressly provided that the insured "waives all rights of subrogation that [it] or its insurers may have against Contractor's Clients," which included the defendant. *Id.* at *6-7. There is no such contractual provision between H. C. Beck and AISD in this case.

7

AISD also argues that the procurement-of-insurance provision's requirement that the insurance include "waivers of subrogation" is too indefinite to be enforced. *See T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992) (contract, to be legally binding, must be sufficiently definite in its terms so that court can understand what promisor undertook). According to AISD, the provision omits essential terms such as whom the waivers are in favor of, whom the waivers operate against, and what work is to be covered. We are not convinced that the lack of specificity for these terms relating to the waiver-of-subrogation clause to be obtained by AISD is sufficient to make the obligation to procure some form of waiver of subrogation non-binding. *Compare id.* (purported contract to loan money too indefinite because no interest rate or repayment terms set forth). In addition, we do not consider the contractual provision at issue to be ambiguous. The language of a contract is ambiguous when it is susceptible to two or more reasonable interpretations. *Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006). AISD does not suggest, and we do not find, a reasonable interpretation of the contract's "waivers of subrogation" clause other than that the "liability and property insurance" policy purchased by AISD in accordance with the contract must waive the insurer's rights of subrogation against H. C. Beck for liabilities covered by the policy. *See Walker Eng'g, Inc. v. Bracebridge Corp.*, 102 S.W.3d 837, 841-44 (Tex. App.—Dallas 2003, pet. denied) (describing purpose of waivers of subrogation in construction context). Thus, the procurement-of-insurance provision at issue here neither makes the contract indefinite nor creates an ambiguity.

We conclude that, on this record, the district court erred in granting H. C. Beck's motion for summary judgment. We reverse the judgment of the district court, and we remand for further proceedings consistent with this opinion.

_____

G. Alan Waldrop, Justice

Before Justices Pemberton, Waldrop and Henson;
    Dissenting Opinion by Justice Henson

Reversed and Remanded

Filed:   March 13, 2009

9