**TX. C.C., INC., Appellant,**

v.

**WILSON/BARNES GENERAL CONTRACTORS, INC. and Colorado Stone, Incorporated a/k/a Colorado Stone and Stucco, Appellees.**

No. 05–06–00155–CV.

Court of Appeals of Texas, Dallas.

Aug. 28, 2007.

Thomas J. Stutz, Martin, Mason, Stutz, LLP, Dallas, for appellant.

Michelle E. Robberson, R. Brent Cooper, Nathan P. Pekar, Cooper & Scully,

P.C., R. Wayne Gordon, Rodney Geer, Touchstone, Bernays, Sidney H. Davis, Jr., Touchstone Bernays Johnston Beall & Smith, Dallas, for

Before Justices WRIGHT, RICHTER, and LANG.

## OPINION

Opinion by Justice RICHTER.

This is an appeal from a traditional summary judgment in a subrogation claim arising out of a 1996 restaurant construction contract between TX. C.C. and Wilson/Barnes General Contractors. The restaurant was completed in January 1997, but destroyed in a December 2000 fire resulting from a faulty fireplace installed by Colorado Stone, Inc. a/k/a Colorado Stone and Stucco, a subcontractor. TX. C.C. was compensated for its loss by Safeco Lloyds Insurance Company under a property insurance policy acquired in 1999. TX. C.C., as Safeco's insured, subsequently sued Wilson/Barnes and Colorado Stone for reimbursement for the proceeds paid under the policy. Wilson/Barnes and Colorado Stone both successfully moved for summary judgment asserting two "standard" waiver of subrogation clauses in the contract shifted the risk of loss resulting from fire to any property insurance maintained by TX. C.C. and thus barred recovery as a matter of law. We must now determine, as an issue of first impression in this Court, whether waiver of subrogation clauses, one of which we have specifically held enforceable in subrogation claims *during* construction,[1] extend *beyond* the construction period to preclude recovery for proceeds paid for post-construction loss under a policy voluntarily obtained

---

1. *See Walker Eng'g v. Bracebridge Corp.*, 102 S.W.3d 837 (Tex.App.-Dallas 2003, pet. denied); *Temple EasTex, Inc. v. Old Orchard Creek Partners, Ltd.*, 848 S.W.2d 724 (Tex. App.-Dallas 1992, writ denied).

after the construction period.[2] Concluding they do, we affirm the trial court's judgment.

## Background

The contract at issue here consists of two standard documents commonly used in the construction industry—the American Institute of Architects (AIA) A101–1987 "Standard Form of Agreement Between Owner and Contractor" and the A201–1987 "General Conditions of the Contract for Construction." The "General Conditions" consists of fourteen articles concerning the various duties and responsibilities of the "Owner," TX. C.C., and the "Contractor," Wilson/Barnes, as well as the allocation of risks between the two. Of particular relevance to the appeal is Paragraph 11.3, entitled "Property Insurance." This paragraph provides in relevant part as follows:

> 11.3.1 Unless otherwise provided, the Owner shall purchase and maintain ... [an all-risk] property insurance ... for the entire Work ... until final payment has been made....

> 11.3.2 Boiler and Machinery Insurance. The Owner shall purchase and maintain boiler and machinery insurance required by the Contract Documents[3] or by law, which shall specifically cover such insured objects during installation and until final acceptance by the Owner ...

> 11.3.3 Loss of Use Insurance. The Owner, at the Owner's option, may purchase and maintain such insurance as will insure the Owner against loss of use of the Owner's property due to fire or other hazards, however caused ...

> 11.3.5 If ... *after final payment*[4] *property insurance is to be provided on the completed Project* through a policy or policies other than those insuring the Project during the construction period, the *Owner shall waive all rights* in accordance with the terms of Subparagraph 11.3.7 *for damages caused by fire* or other perils *covered by this separate property insurance. All separate policies shall provide this waiver of subrogation by endorsement or otherwise.*

> 11.3.7 Waiver of Subrogation. *The Owner* and Contractor *waive all rights* against (1) each other and any of their subcontractors, sub-subcontractors, agents and employees, each of the other ... *for damages caused by fire or other perils to the extent covered by* property insurance obtained pursuant to this Paragraph 11.3 or *other property insurance* applicable to the Work, except such rights as they have to proceeds of such insurance held by the Owner as fiduciary ... The policies shall provide such waivers of subrogation by endorsement or otherwise.

---

**2.** In its motion, Wilson/Barnes also asserted it was entitled to judgment as a matter of law because the limitations and loss of use provisions in the contract as well as the economic loss rule preclude recovery. In its order granting the motion, the trial court did not specify the basis for its ruling. In its other issues on appeal, TX. C.C. challenges the additional grounds for summary judgment alleged by Wilson/Barnes. Because the issue concerning the waiver of subrogation clauses is dispositive of the appeal, we do not address the propriety of summary judgment on the other grounds alleged. *See* Tex.R.App. P. 47.4.;

*AIG Life Ins. Co. v. Federated Mut. Ins. Co.,* 200 S.W.3d 280, 284 (Tex.App.-Dallas 2006, pet. denied) (noting where summary judgment motion alleges more than one ground and trial court's order granting motion does not specify basis for ruling, appellate court will affirm if any ground has merit).

**3.** The "Contract Documents" consist of the two AIA documents as well as several addenda.

**4.** Final payment was made January 25, 1997.

(Emphasis added.) The contract defines "Work" in relevant part as the "construction and services required by the Contract Documents, whether completed or partially completed, and ... may constitute the whole or a part of the Project." "Project" is defined as the restaurant.

Paragraphs 11.3.5 and 11.3.7 form the basis of the summary judgment motions. Under these provisions, subrogation rights are waived for damages resulting from fire or other perils in three situations: (1) under paragraph 11.3.5 if after final payment property insurance is "to be" provided through a policy or policies other than those insuring the project during the construction period; and under paragraph 11.3.7 to the extent covered by (2) property insurance obtained pursuant to paragraph 11.3 or (3) "other property insurance applicable to the Work." In all three situations, the Contract Documents require that the policies provide such waivers of subrogation by endorsement or otherwise.

Wilson/Barnes and Colorado Stone argued in their motions that, although TX. C.C.'s obligation to maintain property insurance on the restaurant terminated upon final payment, because TX. C.C. opted to obtain a policy after final payment and the damage to the restaurant was covered by that policy, TX. C.C. waived its rights against them for damages caused by the fire either under the first situation or the third. And because Safeco, as TX. C.C.'s insurer, has no rights by way of subrogation beyond TX. C.C.'s, Wilson/Barnes and Colorado Stone argued further, recovery in the lawsuit is precluded as a matter of law. *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. John Zink, Co.,* 972 S.W.2d 839, 843 (Tex.App.-Corpus Christi 1998, pet. denied) (insurer acquires right to be subrogated to any cause of action insured may have against offending party upon payment for loss; insurer's right to subrogation derives from insured's rights and is limited to those rights). In a single order, the trial court summarily agreed.

On appeal, TX. C.C. asserts enforcing the waiver of subrogation clauses after completion of the restaurant and final payment does not reflect the intent of the parties as construed by the rules of contract construction and does not advance the public policy underlying such clauses. Given the parties' intent and the underlying public policy, the scope of the waiver of subrogation clauses, TX. C.C. argues, is limited to that of the insurance requirement which under paragraph 11.3.1 is the period of construction. As such, TX. C.C. maintains, the third situation—providing for waiver of subrogation claims under paragraph 11.3.7 if "other property insurance applicable to the Work" covers damages resulting from fire or other perils—applies only during the construction period if the owner opts to rely on existing property insurance in place at the time of construction instead of the insurance required by paragraph 11.3.1. TX. C.C. maintains the first situation—providing for waiver of subrogation claims under paragraph 11.3.5 if after final payment insurance is to be provided through a policy other than that insuring the project during construction—applies only if the contract *requires* the owner to maintain insurance post-construction. Because the fire did not occur during construction and because it was not required to maintain property insurance once the restaurant was completed, TX. C.C asserts, recovery is not barred as a matter of law and thus the waiver of subrogation clauses cannot support summary judgment. In the alternative, TX. C.C. asserts, the waiver of subrogation clauses cannot support summary judgment because they are ambiguous.

## Standard of Review

■■■ We review de novo both the granting of a summary judgment motion and a trial court's interpretation of a contract. *AIG Life, Ins. Co. v. Federated Mut. Ins. Co.*, 200 S.W.3d 280, 284 (Tex. App.-Dallas 2006, pet. denied) (summary judgment); *First Trust Corp. TTEE FBO v. Edwards*, 172 S.W.3d 230, 233–34 (Tex. App.-Dallas 2005, pet. denied) (contract). When reviewing a traditional summary judgment, we determine whether the movant met its burden of establishing that no material fact issue exists and that it is entitled to judgment as a matter of law. TEX.R. CIV. PROC. 166a; *AIG Life*, 200 S.W.3d at 284. We take the non-movant's evidence as true, indulge every reasonable inference in favor of the non-movant, and resolve all doubts in the non-movant's favor. TEX.R. CIV PROC. 166a; *AIG Life*, 200 S.W.3d at 284. When, as here, the trial court does not specify the basis for granting the motion, we will affirm if any ground supports the ruling. *AIG Life*, 200 S.W.3d at 284.

■■■ When reviewing the court's interpretation of a contract, we give words in the contract their plain meaning and examine the entire contract in an effort to harmonize and give effect to all the provisions so that none will be rendered meaningless. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157–59 (Tex.2003); *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983). We determine the parties' intent from the instrument as a whole, considering each provision not in isolation but with reference to the entire contract. *Stine v. Stewart*, 80 S.W.3d 586, 589 (Tex.2002); *Coker*, 650 S.W.2d at 393. We will find the contract to be unambiguous and will construe it as a matter of law if we can give it a certain or definite legal meaning or interpretation. *Coker*, 650 S.W.2d at 393; *Ludwig v. Encore Med., L.P.*, 191 S.W.3d 285, 290 (Tex.App.-Austin 2006, pet. denied). On the other hand, if the contract's meaning is uncertain or reasonably susceptible to more than one meaning, we will find it ambiguous and, in the context of summary judgment, find its interpretation is an issue of material fact. *Coker*, 650 S.W.2d at 393.

## Public Policy Underlying Waiver of Subrogation Clauses

■■■ A waiver of subrogation clause is a risk-shifting provision premised upon the recognition that it is economically inefficient for parties to a contract to insure against the same risk. *See Temple Eas-Tex, Inc. v. Old Orchard Creek Partners, Ltd.*, 848 S.W.2d 724, 730 (Tex.App.-Dallas 1992, writ denied); *Acadia Ins. v. Buck Constr.*, 756 A.2d 515, 519 (Me.2000). A subrogation waiver encourages parties to anticipate risks and to procure insurance covering those risks and also facilitates and preserves economic relations and activity. *Acadia*, 756 A.2d at 520. Because a property owner can generally acquire insurance to protect the property against fire and other perils, in the context of a construction contract, the waiver of subrogation clause shifts the ultimate risk of loss resulting from such perils to the owner to the extent the damages are covered by insurance. *Id.; Temple EasTex*, 848 S.W.2d at 730. The intent is to avoid disruption during construction and provide certainty and eliminate litigation by having the contracting parties look only to the owner's insurance for protection in the event of loss resulting from fire or other perils. *Walker Eng'g, Inc. v. Bracebridge Corp.*, 102 S.W.3d 837, 841 (Tex.App.-Dallas 2003, pet. denied); *Acadia*, 756 A.2d at 519; *Ind. Ins. Co. v. Erhlich*, 880 F.Supp. 513, 518 (W.D.Mich.1994). In other words, a waiver of subrogation clause substitutes the protection of insurance for the uncer-

tain and expensive protection of liability litigation. *Erhlich*, 880 F.Supp. at 518.

## Discussion

In theory, we can affirm the judgment if the subrogation waiver in either paragraph 11.3.5 or 11.3.7 applies because the trial court did not specify the basis for its ruling. *See AIG Life*, 200 S.W.3d at 284. However, because we must determine the parties' intent from the instrument as a whole and must consider each provision in reference to the entire contract, we consider the scope of both paragraphs. *See Stine*, 80 S.W.3d at 589; *Coker*, 650 S.W.2d at 393.

### *Scope of Phrase "Other Property Insurance Applicable to the Work" in Paragraph 11.3.7*

 In arguing the scope of the subrogation waivers cannot exceed the insurance requirement itself and thus the waiver in paragraph 11.3.7 resulting from damages covered by "other property insurance applicable to the Work" applies only to damages covered by an existing property insurance in place at the time of construction, TX. C.C. relies on *Automobile Insurance Co. of Hartford, Connecticut v. United H.R.B. General Contractors, Inc.*, 876 S.W.2d 791 (Mo.App.1994); *Trinity Universal Insurance Co. v. Bill Cox Construction Inc.*, 75 S.W.3d 6 (Tex.

App.-San Antonio 2001, no pet.); and this Court's decision in *Walker Engineering, Inc. v. Bracebridge Corp.*, 102 S.W.3d 837 (Tex.App.-Dallas 2003, pet. denied). In *H.R.B.*, the court interpreted the 1976 version of paragraph 11.3.7 in a contract for construction of a new sanctuary and educational facilities.[5] *H.R.B.*, 876 S.W.2d at 792. The insurance policy at issue was purchased after "substantial completion"[6] but prior to final payment.[7] *Id.* A fire caused by a faulty electrical system substantially damaged the property after final payment was made and the insurer, after paying the owner, sued the contractor and subcontractor for negligence, breach of contract, and warranty. *Id.* The contractor and subcontractor successfully moved for summary judgment on the ground that each party, in accordance with paragraph 11.3.7 of the contract, had waived any subrogation claims for damages caused by fire to the extent covered by "other property insurance applicable to the Work." *Id.* On appeal, the court reversed, finding the waiver inapplicable once the project had been completed and final payment made on the contract. *Id.* at 795. In so concluding, the court noted the contract contained one other waiver clause which provided that upon final payment, the owner waived all claims "except those arising from faulty or defective Work appearing after substantial completion."[8] *Id.* at 794. Finding this provision

---

**5.** Under the 1976 version of the AIA 201 "General Conditions of the Contract for Construction," paragraph 11.3.7 is numbered 11.3.6. *See H.R.B.*, 876 S.W.2d at 792–93. For convenience and because we observe no relevant substantive differences between the two, we will use the 1987 numbering.

**6.** Article 9.8.1 of the AIA 201–1987 "General Conditions of the Contract for Construction" defines "substantial completion" as "the stage in the progress of the Work when the Work or designated portion thereof is sufficiently complete in accordance with the Contract Docu-

ments so the owner can occupy or utilize the Work for its intended use." *A201–1987 General Conditions of the Contract for Construction*, art. 9.

**7.** Final payment is due once the architect issues a "final Certificate for Payment" indicating the work has been completed in accordance with the contract documents. *Id.*

**8.** This provision, paragraph 9.9.4.2, appears to have been renumbered as paragraph 4.3.5.2 in the 1987 version of the "General Conditions." Paragraph 4.3.5.2 provides that

contradictory to the general language in paragraph 11.3.7, the court concluded an ambiguity existed. *Id.* In attempting to reconcile the ambiguity, the court noted that the contract defined "Work" in relevant part as "the completed construction required by the Contract Documents." *Id.* at 793. In order to give effect to both paragraph 11.3.7 and the other waiver provision, the court concluded "Work" included the "completed structure, *but only for the time interval between the completion of the building and final payment.*" *Id.* at 794 (emphasis added). The court concluded the waiver in paragraph 11.3.7 thus applied only until final payment. *Id.* The court also concluded once the owner made the final payment, the other waiver provision became effective, allowing for the insurer's claim to proceed. *Id.*

In *Trinity Universal,* the owner purchased a builder's risk policy four months prior to entering into a contract for the restoration and renovation of a building complex. *Trinity Universal,* 75 S.W.3d at 8. When the owner entered into the contract, it did not purchase any further property insurance. *Id.* Seven months into the project, and while the builder's risk policy was still in effect, the building complex caught fire as the result of work done by a subcontractor. *Id.* After paying the owner for its loss, the insurer sought to recover for the proceeds it paid. *Id.* The contractor and subcontractor successfully moved for summary judgment on the ground that a waiver of subrogation clause, identical to paragraph 11.3.7 here, barred recovery. *Id.* On appeal, the insurer argued the waiver of subrogation clause did not apply because the policy was not purchased pursuant to the contract and was not "other property insurance applicable to the

Work." *Id.* at 9. After reviewing cases from other jurisdictions interpreting language identical or substantially similar to the language in paragraph 11.3.7 here, the court adopted the reasoning of a "majority of jurisdictions," holding the waived claims under clauses identical to paragraph 11.3.7 are not defined by what property is harmed, but by the source of any insurance proceeds paying for the loss—that is, whether the loss was paid by a policy "applicable to the Work." *Id.* at 11–13 (citations omitted). Because the policy at issue covered the loss, the court concluded the policy constituted "other property insurance applicable to the Work" and as such barred recovery. *Id.* at 15.

In *Walker,* this Court considered whether proceeds paid under property insurance covering an existing building and in effect prior to a contract for an addition and improvements to the building could be recovered in a negligence suit against the subcontractor after the building was heavily damaged by a water leak resulting from the subcontractor's labor. *Walker,* 102 S.W.3d at 838–39. In addition to that policy, the owner also had purchased a separate builder's risk policy insuring the "Work" in accordance with the contract, the same 1987 AIA contract here. *Id.* at 839. Relying on paragraph 11.3.7, the subcontractor argued recovery was barred because the property was insured by "other property insurance applicable to the Work." *Id.* at 839–40. Because the policy was not purchased pursuant to the contract and covered the existing building, not the "Work," the owner maintained no waiver occurred. *Id.* at 840. Like the *Trinity Universal* court, this Court examined other jurisdictions' interpretation of similar waiver clauses and, relying on

upon final payment, the owner waives all claims "except those arising from ... failure of the Work to comply with the requirements

of the Contract Documents." *See* AIA A201–1987 *General Conditions of the Contract for Construction,* art. 4.

*Trinity Universal,* concluded that because the policy covered the loss, the waiver clause applied and barred the suit. *Id.* at 841–44. The Court noted that although the owner had also purchased a separate builder's risk policy insuring the "Work" in accordance with the contract, the scope of paragraph 11.3.7 was not limited to that coverage. *Id.* at 844. By agreeing to the waiver of subrogation clause, the parties agreed they would all be "protected from property loss under the owner's property insurance," regardless of whether it was the policy required by contract or other property insurance. *Id.*

Relying on the rationale in *H.R.B.,* TX. C.C. notes its contract with Wilson/Barnes contains another waiver clause—paragraph 4.3.5.2 [9]—similar to the "other" waiver clause in *H.R.B.* That clause specifically reserves the right of the owner, upon final payment, to bring a claim arising from "failure of the Work to comply with the requirements of the Contract Documents." TX. C.C. argues that in accordance with *H.R.B.,* to give meaning to both that clause and the "other insurance" waiver language in paragraph 11.3.7, "Work" must be interpreted to mean "the completed structure but only through final payment." TX. C.C. maintains this interpretation is consistent with the holdings in *Trinity Universal* and *Walker.* Because the owners in these two cases opted to rely on an existing policy instead of the policy required to be provided under paragraph 11.3.1, TX. C.C. argues, the cases stand for the proposition that waiver is triggered by "an existing property insurance policy broad enough to allow the owner to comply with the insurance procurement obli-

gations imposed under 11.3.1." And because paragraph 11.3.1 imposes an obligation on the owner to maintain insurance only until final payment has been made, the "other property insurance" language necessarily is limited in scope to the insurance requirement during the construction period. As such, because its policy with Safeco was voluntarily obtained "well after" it had tendered its final payment, TX. C.C. maintains, its subrogation claim is not barred under paragraph 11.3.7. We disagree.

As stated, the contract defines "Work" in relevant part as the "construction services required by the contract documents, *whether completed or partially completed."* (Emphasis added.) Under the plain meaning of these words, "Work" encompasses the completed services, in this case, the restaurant. No temporal limitation exists within the definition. To interpret "Work" to mean "the completed structure but only through final payment," as the *H.R.B.* court did, would require us to go beyond the plain meaning of the words in contravention of our rules of contract construction. Additionally, limiting the term "Work" to "the completed structure, but only through final payment" would in turn limit the claims under paragraph 4.3.5.2 to those arising through the date of final payment also, and this in turn would render paragraph 4.3.5.2 meaningless. We find the rationale in *H.R.B.* unpersuasive.

We conclude paragraphs 4.3.5.2 and 11.3.7 can both be given full effect simply by reading them together and giving them their plain meaning: final payment does not result in waiver of any claims resulting

---

**9.** Paragraph 4.3.5.2 is a subpart of paragraph 4.3.5. In addition to the claims in 4.3.5.2, paragraph 4.3.5 excludes from waiver claims arising from "liens, Claims, security interests, or encumbrances arising out of the Contract and unsettled; … or .3 terms of special war-

ranties required by the Contract Documents." TX. C.C. notes paragraph 9.10.3 of the contract reiterates that the making of final payment shall constitute a waiver of claims by the owner except as provided in paragraph 4.3.5.

from non-complying work unless the damage is caused by fire and covered by property insurance obtained pursuant to paragraph 11.3 or other property insurance that covers the work. In so concluding, we reject TX. C.C.'s narrow construction of *Trinity Universal* and *Walker*. Although both cases involved property insurance policies obtained *prior* to construction, we find the import of the cases to be that as long as property insurance covered the damages to the structure, whether completed or not, the waiver applies. This is consistent with the plain meaning of "other property insurance applicable to the Work": property insurance other than that required under paragraph 11.3 covering damages to the "construction, whether completed or partially completed." *Cf. Town of Silverton v. Phoenix Heat Source Sys.*, 948 P.2d 9 (Co.App.1997, cert.dism'd) (concluding subrogation claim for damage sustained eighteen months after final payment and paid under policy obtained at beginning of construction waived because "other insurance applicable to the Work" in 1987 version of paragraph 11.3.7 refers to *any* property insurance applicable to the work other than insurance pursuant to paragraph 11.3.1); *Blue Cross v. McDevitt & Street*, 234 Va. 191, 360 S.E.2d 825 (1987) (concluding subrogation claim for damage resulting four months after substantial completion but prior to final payment and paid under coverage extended to cover property after substantial completion waived under 1976 version of paragraph 11.3.7 because definition of "Work" encompassed "substantially completed building").

Given the plain meaning of the phrase "other property insurance applicable to the Work," we conclude the parties intended subrogation claims to be waived if TX. C.C. obtained property insurance that covered any damage to the restaurant resulting from fire and/or other perils. Because TX. C.C.'s policy with Safeco covered the damages to the restaurant, we conclude TX. C.C. waived all rights against Wilson/Barnes and Colorado Stone for damages caused by the fire and, because Safeco's rights are limited to TX. C.C.'s rights, the subrogation claim is barred as a matter of law. *See John Zink*, 972 S.W.2d at 843.

We find support for our conclusion in the language in paragraph 11.3.7 requiring the insurance "policies [to] provide such waivers of subrogation by *endorsement or otherwise.*" Requiring the owner to take affirmative action in these "other provisions" further shows the parties' intent that the waiver would be broad. We also find support for our conclusion in the policy underlying subrogation waivers. Although subrogation waivers serve to ensure construction stays on schedule without falling victim to lawsuits or other protracted claims processes, their purpose extends beyond the construction period. By having all the contracting parties look solely to any insurance coverage maintained by the owner post-construction in the event of loss resulting from fire or other perils, subrogation waivers continue to ensure economic relations are preserved, risks are anticipated, proper insurance protection obtained, and also continue to afford the contracting parties certainty as to liability. TX. C.C.'s contention that enforcing the waiver in paragraph 11.3.7 post-construction and final payment does not reflect the parties' intent as construed by the rules of contract construction and does not advance the public policy underlying subrogation waivers is without merit.

*Scope of Phrase "If After Final Payment Property Insurance Is To Be Provided" in Paragraph 11.3.5*

 TX. C.C.'s argument that enforcing the waiver in paragraph 11.3.5 does not

reflect the parties' intent or further underlying public policy is also without merit. In arguing subrogation waivers cannot exceed the insurance requirement itself and thus the waiver in paragraph 11.3.5 resulting from property insurance that is "to be" provided after final payment applies only if the owner is *required* by contract to maintain insurance post-construction, TX. C.C. relies on *Lumbermens Mutual Casualty Co. v. Grinnell Corp.*, 477 F.Supp.2d 327 (D.Mass.2007). In *Grinnell*, the court construed the 1997 version of paragraphs 11.3.5 and 11.3.7.[10] *Id.* at 329, 331. Faced with the same argument TX. C.C. makes here that the phrase "to be" in paragraph 11.3.5 means "required," the court agreed. *Id.* at 332. Interpreting the phrase as an express intent of a future obligation and finding no requirement in the contract that property insurance be maintained post-construction, the court concluded the subrogation claim was not barred. *Id.* The court reasoned that releasing a general contractor and subcontractor from post-construction liability simply because the property owner chooses to purchase post-construction insurance policy for its own benefit would "likely" result in a windfall for the contractor and subcontractor unless they had negotiated such a release in advance. *Id.* The court further reasoned that if the post-construction insurer knew its insured had waived subrogation rights, the insurer would certainly assess a higher premium than if it retained its common law right to subrogation. *Id.* at 333.

TX. C.C. asserts this interpretation of "to be" is consistent with language in para-graph 11.1 concerning the contractor's liability insurance. Under paragraph 11.1.1, the contractor is required to maintain liability insurance to protect itself from claims such as disability benefit claims or claims for damages resulting from the death of an employee. This requirement exists until final payment. Paragraph 11.1.3 provides in relevant part that "[i]f any of the foregoing insurance coverages *are required to remain in force after final payment* and are reasonably available, an additional certificate evidencing continuation of such coverage shall be submitted with the final Application for Payment." (Emphasis added.) TX. C.C. argues this language "reference[s] ... future insurance to be maintained by the contractor that might be required elsewhere in the contract" and thus supports its position that "to be" means "required." TX. C.C. also argues that if the contract intended for subrogation claims to be waived *if any* property insurance is provided upon final payment, then the word "is" would have been used instead of "to be." We disagree.

In concluding "to be" means "required," the *Grinnell* court relied on the dissenting opinion in *Midwestern Indemnity Co. v. Systems Builders, Inc.*, 801 N.E.2d 661 (Ind.Ct.App.2004). In *Midwestern*, a majority of the court concluded that the language in the 1997 version of paragraph 11.3.5 barred subrogation claims under a voluntarily maintained post-construction insurance policy that was not in place or specifically contemplated at the time the parties entered into their general construc-

---

**10.** Under the 1997 version of the AIA 201– "General Conditions of the Contract for Construction," paragraph 11.3.5 has been renumbered to paragraph 11.4.5 and paragraph 11.3.7 has been renumbered to paragraph 11.4.7. *See Grinnell*, 477 F.Supp.2d at 329. The renumbering is due to the addition of a paragraph entitled "Project Management Pro-tective Liability Insurance." *See* Alan B. Stover, *Comparison of 1987 and 1997 Editions (1987 BASE), AIA Document A201–1997, General Conditions of the Contract for Construction*, art. 11. Again, for convenience and because we observe no relevant substantive differences, we will use the 1987 numbering.

tion contract. *Midwestern,* 801 N.E.2d at 664, 669. Disagreeing with the majority, the dissent found the phrase "to be" in paragraph 11.3.5 was "key" to determining the scope of the waiver. *Id.* at 667 (Baker, J., dissenting). "To be," the dissent noted, is a qualifier used "to express intention, *obligation* or future action." *Id.* (Baker, J., dissenting) (citing AM. HERITAGE DICTIONARY 155 (4th ed.2000)). As such, the dissent concluded, paragraph 11.3.5 "simply means that *if* the construction contract creates an *obligation* in the owner to purchase insurance after construction is completed, then a waiver of subrogation results." *Id.* (Baker, J., dissenting).

 Such a construction of the phrase "to be," however, cannot be obtained under our rules of contract construction. Although the dissent in *Midwestern* identified three "uses" of the phrase "to be," only one was given in interpreting the scope of paragraph 11.3.5. Under our rules, we cannot choose what meaning to give words, but must give them their plain meaning. Giving "to be" its plain meaning, we conclude waiver results if after final payment the owner *intends* to provide property insurance, the contract *requires* the owner to provide property insurance, or the owner *provides* property insurance *in the future.* AM. HERITAGE DICTIONARY 155 (4th ed.2000). That the word "is" could have been used instead does not change the plain meaning of the phrase. Nor does the language in paragraph 11.1.3 concerning the contractor's liability insurance that TX. C.C. maintains support its position that the meaning of "to be" is limited to "required." To the contrary, that language—"required to remain in effect after final payment"—by its plain meaning is self-limiting to that which is an obligation. Given the meaning of "to be," we conclude the parties intended subrogation claims to be waived if TX. C.C. provid-

ed insurance post-construction through a policy other than that insuring the project during construction. *See Midwestern,* 801 N.E.2d at 669 (concluding subrogation claim arising from proceeds paid under policy obtained post-construction waived under 1987 version of paragraph 11.3.5); *Colonial Props. Realty Ltd. P'ship v. Lowder Constr. Co.,* 256 Ga.App. 106, 567 S.E.2d 389 (2002) (same). Although TX. C.C. was not required by the contract to provide post-construction insurance and no such intent can be gleaned from the contract itself, no dispute exists that TX. C.C. did in fact provide post-construction insurance beginning at least in 1999. As such, it waived its rights against Wilson/Barnes and Colorado Stone for damages resulting from the fire and, because Safeco's rights are limited to TX. C.C.'s rights, the subrogation claim is barred. *See John Zink,* 972 S.W.2d at 843.

In reaching this conclusion, we reject the reasoning in *Grinnell.* Although a contractor and subcontractor might receive a "windfall" from the enforcement of the waiver in paragraph 11.3.5 if post-construction insurance is not negotiated in advance but is provided, the purchase of the policy does not come at a total loss to the owner and insurer. The construction industry, like other industries, is characterized by turnover and instability. No guarantee exists that a contractor or subcontractor in business today will be in business tomorrow. Moreover, with the passage of time, witnesses may move or their memories fade, making it harder to establish liability. By purchasing a post-construction insurance policy, even though not required by contract to do so, the owner, in furtherance of the public policy underlying subrogation waivers, is assured to be compensated for any losses resulting from fire or other perils and avoids the possibility of pursuing litigation against a judgment-proof or no-longer-in-business

contractor or subcontractor. At the same time, the insurer stands to gain in the form of higher premiums. *Grinnell,* 477 F.Supp.2d at 333. Although *Grinnell* expresses concern that an insurer will not know its insured has waived subrogation rights, paragraph 11.3.5 specifically requires "[a]ll separate policies [to] provide this waiver of subrogation by endorsement or otherwise." Whether an insured does so might impact the insurer's obligation to the insured but does not impact the applicability of the waiver in a subrogation claim.

Our conclusion that the waiver in paragraph 11.3.5 applies to the facts in this case is consistent with our conclusion that the waiver in paragraph 11.3.7 also applies. If the phrase "to be" in paragraph 11.3.5 meant only "required," then damages paid under a policy obtained voluntarily would not result in waiver under paragraph 11.3.7. This, however, would render the phrase "other property insurance applicable to the Work" in paragraph 11.3.7 meaningless in contravention of our rules of contract construction. Our conclusion is also consistent with the language requiring the insurance "policies [to] provide such waivers of subrogation by endorsement or otherwise." This language is found not only in paragraph 11.3.7, but also paragraph 11.3.5. Again, requiring the owner to take affirmative action in these "other provisions" further shows the parties' intent that the waiver would be broad.

## Conclusion

Applying the appropriate standard of review and bearing in mind the public policy underlying subrogation waivers, we conclude the contract is not ambiguous and the subrogation waivers can be given a definite interpretation. That interpretation is that TX. C.C., and accordingly Safeco, waived its rights against Wilson/Barnes and Colorado Stone for damages to the restaurant arising from fire that were covered by any property insurance, including a policy purchased post-construction. Because TX. C.C. maintained insurance post-construction and that policy paid for the damages to the restaurant, TX. C.C.'s subrogation claim is barred under paragraphs 11.3.5 and 11.3.7. In other words, the subrogation waivers extend beyond the construction period and Wilson/Barnes and Colorado Stone were entitled to judgment as a matter of law.

We affirm the trial court's judgment.