

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

**NO. 2-08-502-CV**


TRAVELERS LLOYDS INSURANCE
COMPANY

APPELLANT

V.

DYNA TEN CORPORATION

APPELLEE

------------

FROM THE 153RD DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

Travelers Lloyds Insurance Company appeals from a summary judgment

in favor of Dyna Ten Corporation. We reverse and remand.

### Background

The underlying facts are not in dispute. *See* Tex. R. App. P.

38.2(a)(1)(B). On or about August 1, 2005, an HVAC condenser water line

---

[1] *See* Tex. R. App. P. 47.4.

ruptured on the fifth floor of "The Tower" condominium skyscraper in Fort Worth. The ruptured water line resulted in water damage to multiple floors, the elevator system, and the fire alarm system. Travelers contends the rupture of this water line was caused by improper soldering of the high-pressure pipe and joint at the time of the installation. Dyna Ten, a plumbing subcontractor on a construction project at the Tower, installed the pipe. The general contractor for the construction project was Turner Construction Company, and the project was governed by a construction contract entered into between Turner as "Contractor" and TLC Green Property Associates I, L.P. ("TLC") as "Owner" of the Tower.

The contract between TLC and Turner contained the following waiver of subrogation:

13.7 Waiver of Subrogation

Owner and Contractor waive all rights against each other, if any, for damages caused by fire or other causes of loss to the extent of actual recovery of any insurance proceeds under any property insurance applicable to the Project except such rights as they have to proceeds of such insurance held by Owner in good faith. This waiver applies regardless of whether or not the applicable insurance policies were purchased and/or effective before this Agreement was entered into or purchased pursuant to the terms of this Agreement. Owner requires that Contractor and its separate Contractors, and the subcontractors, sub-subcontractors, agents and employees of any of them, by appropriate agreements, written where legally required for validity, obtain similar waivers each in

2

favor of the Owner. The policies shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subrogation shall be effective as to a person or entity even though that person or entity did not pay the Insurance premium directly or indirectly and whether or not the person or entity had an insurable interest in the property damaged.

Travelers provided a commercial insurance policy composed of deluxe property coverage, commercial general liability coverage, and employee benefits liability coverage relating to the Tower. The policy lists the Tower as an insured location, and it identifies TLC as a named insured. Travelers paid insurance benefits to or on behalf of TLC in the sum of $119,922.09.

Travelers then sued Dyna Ten, claiming that it was entitled as TLC's subrogee to recover damages against Dyna Ten. Dyna Ten filed a motion for summary judgment on the affirmative defense of waiver, arguing that the contract's subrogation waiver, as well as a subrogation waiver in the policy, precluded Travelers's subrogation claim as a matter of law. The trial court granted Dyna Ten's motion; the trial court's order does not indicate whether its judgment is based on the contract, the policy, or both. Travelers filed this appeal.

### Standard of Review

We review summary judgments de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). Under the standard

3

applicable to a traditional motion for summary judgment, the motion should be granted only when the movant establishes that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985).

## Discussion

An insurer's right to subrogation derives from and is limited to the rights of the insured. *Trinity Universal Ins. Co. v. Bill Cox Constr., Inc.*, 75 S.W.3d 6, 8 (Tex. App.—San Antonio 2001, no pet.); *see also TX. C.C., Inc. v. Wilson/Barnes Gen. Contractors, Inc.*, 233 S.W.3d 562, 571 (Tex. App.—Dallas 2007, pet. denied) (holding insurer's subrogation claim barred as a matter of law when property owner waived subrogation "because [the insurer's] rights are limited to [the property owner's] rights"); *Nat'l Union Fire Ins. Co. v. John Zink Co.*, 972 S.W.2d 839, 844 (Tex. App.—Corpus Christi 1998, pet. denied) ("The subrogees stand in the shoes of the one whose rights they claim, and the extent of the subrogees' remedy and the measure of their rights are controlled by those possessed by the subrogor."). A release between the insured and the offending party prior to the loss destroys the insurer's rights by way of subrogation. *Trinity Universal*, 75 S.W.3d at 10. The purpose of a

waiver-of-subrogation provision in a construction contract "is to eliminate the need for lawsuits by protecting all contracting parties from property loss under the owner's property insurance." *Walker Eng'g, Inc. v. Bracebridge Corp.*, 102 S.W.3d 837, 841 (Tex. App.—Dallas 2003, pet. denied).

When reviewing a trial court's interpretation of a contract, we give words in the contract their plain meaning and examine the entire contract in an effort to harmonize and give effect to all the provisions so that none will be rendered meaningless. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157–59 (Tex. 2003); *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). We determine the parties' intent from the instrument as a whole, considering each provision not in isolation but with reference to the entire contract. *Stine v. Stewart*, 80 S.W.3d 586, 589 (Tex. 2002); *Coker*, 650 S.W.2d at 393. We will find the contract to be unambiguous and will construe it as a matter of law if we can give it a certain or definite legal meaning or interpretation. *Coker*, 650 S.W.2d at 393; *Ludwig v. Encore Med., L.P.*, 191 S.W.3d 285, 290 (Tex. App.—Austin 2006, pet. denied).

1.    **The construction contract's waiver provision**

Dyna Ten first argues that the subrogation waiver in the contract between TLC and Turner bars Travelers's subrogation claim against Dyna Ten. We

5

disagree. The waiver provides that "Owner and Contractor waive all rights *against each other* . . . for damages caused by fire or other causes of loss to the extent of actual recovery of any insurance proceeds . . . ." [Emphasis added.] Thus, TLC and Turner waived subrogation rights against each other; but nothing in the quoted sentence suggests that TLC also waived subrogation rights in favor of Turner's subcontractors, including Dyna Ten.

The only provision in the contract's subrogation waiver that addresses Turner's subcontractors is this sentence: "Owner requires that Contractor and its separate Contractors . . . , by appropriate agreements, written where legally required for validity, obtain similar waivers each in favor of the Owner." But this provision requires Turner to obtain waivers in favor of TLC; it says nothing about TLC waiving subrogation in favor of Turner's subcontractors, including Dyna Ten.

For a contrasting example of a construction contract in which the owner clearly waived subrogation against the contractor's subcontractors, we look to *TX. C.C.* The subrogation waiver in that case provided that "[t]he Owner and Contractor waive all rights against (1) each other *and any of their subcontractors, sub-subcontractors*, agents and employees, each of the other . . . for damages caused by fire or other perils to the extent covered by property insurance." *TX. C.C.*, 233 S.W.3d at 565 (emphasis added). The Dallas court

6

of appeals held that the owner had waived its subrogation rights against both the contractor and its subcontractors as a matter of law. *Id.* at 574.[2]

Unlike the waiver provision in *TX. C.C.*, TLC's subrogation waiver in this case does not explicitly extend to Turner's subcontractors, and nothing in the construction contract suggests that the parties intended such a waiver. We therefore hold that the contract's subrogation waiver does not bar Travelers's claims against Dyna Ten. If and to the extent the trial court relied on the contract's subrogation waiver as the basis of summary judgment in Dyna Ten's favor, it erred.

**2.    Subrogation waiver in the Travelers insurance policy**

Dyna Ten alternatively argues that a subrogation waiver in the insurance policy Travelers issued to TLC bars Travelers's claims against Dyna Ten. Travelers argues that the waiver is an endorsement to an inapplicable coverage—commercial general liability—and thus plays no role in this case.

The Travelers policy provided for three separate insurance coverages: Deluxe Property Coverage, Commercial General Liability Coverage, and Employee Benefits Liability Coverage. Each coverage is independent, defines

---

[2] The crucial issue in *TX. C.C.* was whether the waiver extended to losses occurring after construction was complete as well as during construction. *Id.* at 564.

7

its covered losses, and sets out its own exclusions, endorsements, amendments, definitions, coverage limits, and coverage premiums.

The subrogation waiver upon which Dyna Ten relies appears in an endorsement to the commercial general liability coverage, as follows:

**XTEND ENDORSEMENT**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

. . . .

**PROVISIONS**

. . . .

**C.   BLANKET WAIVER OF SUBROGATION**

> We waive any right of recovery we may have against any person or organization because of payments we make for injury or damage arising out of premises owned or occupied by or rented or loaned to you; ongoing operations performed by you or on your behalf, done under a contract with that person or organization; "your work"; or "your products." We waive this right where you have agreed to do so as part of a written contract, executed by you prior to loss.

In the commercial general liability coverage part, Travelers agreed to "pay those sums [TLC] becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies."   The coverage excludes "[p]roperty damage to . . . [p]roperty you [TLC] own, rent, or occupy, including

8

any costs or expenses incurred by you . . . for repair, replacement, enhancement, restoration or maintenance of such property for any reason."

By contrast, in the "deluxe" property coverage form, Travelers agreed to "pay for direct physical loss or damage to Covered Property caused by or resulting from a Covered Cause of Loss." "Covered Property" includes "Buildings . . . described in the Declarations," and the declarations specifically describe the Tower.

When interpreting an insurance policy with multiple coverages, each of the coverages, along with its definitions and exclusions, must be read as separate and distinct. *M.J.R. Corp. v. Scottsdale Ins. Co.*, 803 S.W.2d 426, 430 (Tex. App.—Dallas 1991, no writ). Separate coverages comprise distinct, contemporaneous contracts. *Id.*; *see also TIG Ins. Co. v. San Antonio YMCA*, 172 S.W.3d 652, 660 (Tex. App.—San Antonio 2005, no pet.).

The subrogation waiver upon which Dyna Ten relies appears in the "Xtend Endorsement," which applies, by its express terms, solely to the policy's commercial general liability coverage. The commercial general liability coverage applies to sums TLC was obligated to pay to third parties and specifically excludes damages to property owned, rented, or occupied by TLC. The "deluxe" property coverage, on the other hand, specifically covers property

9

damage to the Tower. Thus, it appears that any payments made by Travelers for damage caused by the HVAC water line leak would have been made under the policy's property coverage, not the commercial general liability coverage,[3] and the subrogation waiver in the "Xtend" endorsement does not apply.

We hold that Dyna Ten failed to establish as a matter of law that the "Xtend" endorsement's subrogation waiver applies to the facts of this case. Therefore, to the extent the trial court relied on the endorsement's subrogation waiver as the basis for summary judgment, it erred.

## Conclusion

Because neither the construction contract's subrogation waiver nor the insurance policy's subrogation waiver bar Travelers's claims against Dyna Ten as a matter of law, we hold that the trial court erred by granting summary

---

[3] The coverage under which Travelers made payments is not entirely clear from the record. Travelers simply alleged in its original petition that it made payments "to or for the benefit of Tower under its policy of property insurance." But the burden of proving that the payments were made under the commercial general liability coverage, thus triggering the "Xtend" endorsement's subrogation waiver, falls to Dyna Ten as the party seeking summary judgment, and Dyna Ten filed no summary judgment evidence to carry its burden. *See* Tex. R. Civ. P. 166a(c). On appeal, Travelers asserts in its fact statement—without reference to the record—that it paid benefits under the "deluxe" property coverage, and Dyna Ten does not dispute that assertion in its own brief. *See* Tex. R. App. P. 38.2(a)(1)(B).

10

judgment.  We sustain Travelers's sole issue, reverse the trial court's judgment, and remand the case to the trial court for further proceedings.

ANNE GARDNER
JUSTICE

PANEL:  CAYCE, C.J.; GARDNER and MCCOY, JJ.

DELIVERED:  August 26, 2009