**AFFIRMED and Opinion Filed February 24, 2022**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-20-00586-CV

## ARCH INSURANCE COMPANY, AS SUBROGEE AND INDEMNIFIER OF LINBECK GROUP, LLC, Appellant
## V.
## SOPREMA, INC., Appellee

**On Appeal from the 101st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-17-17759**

## MEMORANDUM OPINION
Before Justices Pedersen, III, Goldstein, and Smith
Opinion by Justice Smith

Appellant Arch Insurance Company, as subrogee and indemnifier of Linbeck

Group, LLC, appeals the trial court's order granting appellee Soprema, Inc.'s motion

for summary judgment. The central issue in this appeal is whether the waiver-of-

subrogation paragraph contained in the construction contract was triggered when

Arch funded a settlement, under a commercial general liability (CGL) insurance

policy, to pay for the repair or replacement of the building's damaged roof allegedly

caused, in part, by a defective roofing membrane supplied by Soprema, a sub-

subcontractor on the construction project. Because we conclude that the damages to

the roof were covered by "property insurance applicable to the Work" as evidenced by Arch's payment under the CGL policy covering property damage, we affirm the trial court's order granting summary judgment for Soprema.

## Background

The Dallas Center for the Performing Arts Foundation, Inc. (DCPAF) contracted with Linbeck in September 2006 to build the Margot and Bill Winspear Opera House, now known as the AT&T Performing Arts Center (PAC), in the Dallas Arts District. Linbeck served as the general contractor on the project and subcontracted out parts of the project, including the roofing installation. The roofing subcontractor, Anchor Roofing Systems, Ltd. (who is no longer a party to this appeal because the parties reached a settlement agreement while the appeal was pending), contracted with Soprema to supply the roofing membrane.

After the PAC opened in October 2009, the DCPAF discovered blistering on the roof, which had resulted in water intrusion and leaks during weather events. Expert analysis determined that the roof needed to be replaced and opined that Anchor's poor workmanship and Soprema's defective membrane were the causes of the roof damage.

Arch, as Linbeck's CGL insurer, paid $1.6 million to the DCPAF to repair or replace the roof and for a release of Linbeck. Arch then filed suit against Anchor and Soprema to recover damages from the alleged construction defects. In

Soprema's answer, it asserted that Arch was barred from recovery due to the following subrogation clause in the general conditions of the construction contract:

12.7    DCPAF and Contractor waive all rights against the City, each other and any of their Subcontractors, Sub-Subcontractors, agents and employees, each of the other, if any, for damages caused by fire or other causes of loss to the extent covered by property insurance obtained or required to be obtained by Contractor (excluding deductibles) pursuant to this Article 12.7, or other property insurance applicable to the Work, except such rights as they have to proceeds of such insurance held by Contractor as fiduciary. The Contractor, as appropriate, shall require of the Subcontractors, Sub-Subcontractors, agents and employees of any of them, by appropriate agreements, written where legally required for validity, similar waivers of each in favor of other parties enumerated herein. The insurance policies obtained by Contractor pursuant to this Article 12.7 shall be endorsed to provide a waiver of subrogation in favor of Contractor, DCPAF, the City, Subcontractors and Sub-Subcontractors. The City is a third-party beneficiary of this Article 12.7.

Soprema moved for summary judgment on this affirmative defense, and Arch moved for a partial summary judgment asserting that the waiver of subrogation was not triggered by payment under a CGL policy.

Soprema argued that the insurance policy, under which Arch paid the settlement, contained "property insurance applicable to the Work" because it covered property damage and the roofing system was part of the construction project—the Work; thus, the subrogation waiver applied. Arch responded that the claim was paid under liability insurance, not property insurance, so the subrogation waiver did not apply. Specifically, Arch alleged that the claim was paid pursuant to the products-completed operations coverage of the CGL policy. Arch argued that the builder's risk insurance, which Linbeck was required to maintain under the contract, was the "property insurance" contemplated by the waiver-of-subrogation paragraph.

After a hearing, the trial court granted Soprema's motion. The trial court denied Arch's partial motion for summary judgment after a separate hearing and, although Arch stated it intended to appeal from the trial court's orders on both motions in its notice of appeal, Arch's brief challenges only the trial court's order granting Soprema's motion.

## Summary Judgment Standard of Review

We review a summary judgment de novo. *Trial v. Dragon*, 593 S.W.3d 313, 316 (Tex. 2019). A traditional motion for summary judgment requires the moving party to show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018). If the movant carries this burden, the burden shifts to the nonmovant to raise a genuine issue of material fact. *Lujan*, 555 S.W.3d at 84. We take evidence favorable to the nonmovant as true, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Ortiz v. State Farm Lloyds*, 589 S.W.3d 127, 131 (Tex. 2019).

## Waiver-of-Subrogation Paragraph Was Triggered

Soprema had the burden to conclusively prove its affirmative defense of waiver of subrogation. The waiver-of-subrogation paragraph contains two operative clauses: (1) "property insurance obtained or required to be obtained by [Linbeck] (excluding deductibles) pursuant to this Article 12.7"; or (2) "other property insurance applicable to the Work." Thus, Soprema had to prove that (1) the damage

–4–

was covered by "property insurance" that (2) was obtained or required to be obtained pursuant to Article 12.7 or was "applicable to the Work."

We review the construction of a contract, including whether it is ambiguous, de novo. *Kachina Pipeline Co. v. Lillis*, 471 S.W.3d 445, 449 (Tex. 2015). We must ascertain the true intentions of the parties as expressed in the agreement itself. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011). In doing so, we "examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). Generally, "the instrument alone will be deemed to express the intention of the parties for it is objective, not subjective, intent that controls." *Matagorda Cty. Hosp. Dist. v. Burwell*, 189 S.W.3d 738, 740 (Tex. 2006) (per curiam) (citation omitted). "We give terms their plain, ordinary, and generally accepted meaning unless the instrument shows that the parties used them in a technical or different sense." *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). Ambiguity does not exist simply because the parties disagree over a term's meaning and present different interpretations of the agreement. *Dynegy Midstream Servs., Ltd. P'ship v. Apache Corp.*, 294 S.W.3d 164, 168 (Tex. 2009); *DeWitt Cty. Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 100 (Tex. 1999).

***Property Insurance***

Arch contends that Soprema failed to meet its burden because it offered evidence only that "some" insurance policy paid the claim, not that the claim was paid by "property insurance" as required by the contract provision. Arch argues that CGL insurance, a liability policy, is not property insurance. Soprema maintains that the CGL policy contained property insurance coverage and that Arch's payment under the CGL was based on such coverage; it paid for property damage to the roof.

The term "property insurance" is not defined in the contract, nor are any of the types of insurance coverage that Linbeck was required to maintain in accordance with the contract titled, "property insurance," although several required coverage for property damage or loss, such as the CGL policy, the builder's risk policy, and the all-risk property policy. Thus, the contract does not suggest that the parties used the term "property insurance" in a technical manner or in a different manner than its plain, ordinary meaning. *See Heritage Res.*, 939 S.W.2d at 121.

The term "property insurance" is defined by Merriam-Webster as "insurance against direct loss or damage, consequential loss, loss due to liability for damages, or loss due to dishonesty or failure of others to perform their duty." *Property Insurance*, MERRIAM-WEBSTER.COM DICTIONARY, https://www.merriam-webster.com/dictionary/property%20insurance (last visited Feb. 16, 2022). Black's Law Dictionary defines "property insurance" as "[a]n agreement to indemnify against property damage or destruction . . . [a]lso termed *property-*

–6–

*damage insurance.*" *Property Insurance,* BLACK'S LAW DICTIONARY (11th ed. 2019).

Applying the plain meaning of the word "property insurance," we conclude that the CGL policy, or at least the portion under which Arch funded the settlement, was a form of property insurance in this case. According to the contract, Linbeck was required to maintain CGL coverage as follows:

12.2.4    Contractor shall maintain commercial general liability (CGL) insurance covering all operations by or on behalf of the Contractor on an occurrence basis against claims for, but not limited to:

- Premises Operations;
- Products and Completed Operations;
- Independent Contractors;
- Contractual Liability;
- Personal Injury (including contractual liability);
- Advertising Injury (including contractual liability);
- Fire Damage Legal Liability;

- Broad Form Property Damage (including completed operations);
- Extended Bodily Injury;
- Work Performed by Subcontractors;
- Severability of Interests;
- Incidental Medical Malpractice;
- Work for municipalities;
- Host Liquor Liability Coverage

The CGL policy specifically included insurance for property damage to completed operations and, thus, was "property insurance" under the plain meaning of the term.

Arch argues that the insurance industry, Texas Legislature, and the courts recognize that "property insurance" means a first-party policy covering an owner's property and does not include a liability policy that covers the insured's liability for damage to a third-party's property. But our interpretation of "property insurance"

–7–

must first be governed by an examination of the entire writing in which the term appears. *See J.M. Davidson*, 128 S.W.3d at 229. The construction contract at issue here did not require the owner, DCPAF, to purchase first-party insurance covering its property. In fact, the owner was not required to purchase any insurance under the construction contract. Instead, the construction contract required Linbeck and its subcontractors to purchase various insurance policies, including the CGL policy. This is significantly different from the contracts and waiver provision that have been previously interpreted by the courts, and relied on by Arch, because the contract and provision at issue here are not the standard contract and clause provided by the American Institute of Architects, which requires the owner to purchase property insurance. *See, e.g.*, *Am. Zurich Ins. Co. v. Barker Roofing, L.P.*, 387 S.W.3d 54, 61–62, 64–65 (Tex. App.—Amarillo 2012, no pet.); *Walker Eng'g, Inc. v. Bracebridge Corp.*, 102 S.W.3d 837, 840–44 (Tex. App.—Dallas 2003, pet. denied); *Temple EasTex, Inc. v. Old Orchard Creek Partners, Ltd.*, 848 S.W.2d 724, 729–31 (Tex. App.—Dallas 1992, writ denied).

Additionally, we find Arch's argument that "property insurance" meant "builder's risk insurance" unpersuasive. Section 12.8 of the general conditions, the section immediately following the waiver-of-subrogation paragraph, specifically provides that if an event occurs which is covered by "builder's risk insurance" and other conditions are met, the DCPAF and Linbeck agree to enter into a Change Order to increase the Guaranteed Maximum Price. Thus, if the

parties meant for "property insurance" to mean only builder's risk insurance, they would have used the term "builder's risk insurance" as they did in section 12.8 instead of the term "property insurance."

We conclude that the term "property insurance" as used in the contract here includes the CGL coverage under which Arch funded the settlement agreement with DCPAF.

### Applicable to the Work

We next look to whether the "property insurance" was "obtained or required to be obtained by [Linbeck] . . . pursuant to this Article 12.7" or was "applicable to the Work." We conclude that the CGL coverage was "applicable to the Work."

Arch argues that the Work means ongoing construction, not completed construction. We disagree. The construction contract provides that "[t]he Work shall consist of all labor and materials required for the construction of the Project in accordance with the Contract Documents, including, without limitation, all of the items described in Article 1.1.14 of the General Conditions, together with all such other items as are reasonably inferable from the Contract Documents to complete the Work." The "Project" is the PAC. The general conditions required that Linbeck provide certificates of insurance to the DCPAF to evidence that Linbeck had acquired the mandatory insurance, such as the CGL policy, before proceeding with any Work. The CGL policy was thus "applicable to the Work" not only because it was required before any Work could be performed but also because it covered

–9–

damages associated with the Work, including property damage to Work that had been completed and Work performed by subcontractors. Regardless of whether the Work had been completed, the labor and materials necessary to construct the roof as part of the Project were necessarily part of the Work. And, thus, because Arch paid for the roof to be repaired or replaced under the CGL policy due to damage to the roof alleged to be caused by poor workmanship and a defective roof membrane—labor and materials provided for the construction of the Project—the insurance was "applicable to the Work."

Our interpretation that the parties intended to extend the application of the subrogation waiver beyond the construction period is consistent with the public policy underlying subrogation waivers in that it continues to preserve economic relations, anticipates risks, and affords contracting parties certainty as to liability. *See TX. C.C., Inc. v. Wilson/Barnes Gen. Contractors, Inc.*, 233 S.W.3d 562, 571 (Tex. App.—Dallas 2007, pet. denied).

Soprema conclusively established that Arch's subrogation claims were waived under the contract. Because the waiver-of-subrogation paragraph is not ambiguous, Arch failed to raise a genuine issue of material of fact. *See id.* at 567 (the interpretation of an ambiguous contract is an issue of material fact). Therefore, the trial court did not err by granting Soprema's traditional motion for summary judgment. We overrule Arch's sole issue on appeal.

## Conclusion

We affirm the trial court's summary judgment in favor of Soprema.

/Craig Smith/

CRAIG SMITH
JUSTICE

200586F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ARCH INSURANCE COMPANY,
AS SUBROGEE AND
INDEMNIFIER OF LINBECK
GROUP, LLC, Appellant

No. 05-20-00586-CV       V.

SOPREMA, INC., Appellee

On Appeal from the 101st Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-17-17759.
Opinion delivered by Justice Smith.
Justices Pedersen, III and Goldstein
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee SOPREMA, INC. recover its costs of this appeal from appellant ARCH INSURANCE COMPANY, AS SUBROGEE AND INDEMNIFIER OF LINBECK GROUP, LLC.

Judgment entered February 24, 2022.